STATE EX REL. CHENOWETH, RESPONDENT, *v.* ACTON, APPELLANT.

(No. 2,062.)

(Submitted May 28, 1904.   Decided June 27, 1904.)

*County School Superintendents—Vacancies—Tie Vote—Qualifications—Statutes—Validity—Constitution.*

1. Where there was a tie vote on an election for school superintendent of a county, such vote did not render the office vacant; the previous incumbent being entitled to hold the same until a superintendent was regularly elected.

2. Political Code, Section 1171, providing that in case of a tie vote for a county officer, except county commissioner, the county commissioners shall appoint some eligible person to fill the office, as in case of other vacancies in such office, in so far as it relates to officers named in Constitution, Article XVI, Section 5, providing that such officers shall hold their offices for two years, and until their successors are elected and qualified, is invalid, as in contravention of such section.

3. Political Code, Section 1744, declaring that no person shall be qualified for the office of county superintendent of schools unless he or she holds a certificate of the highest county grade, and is a citizen of the United States, etc., applies to men and women alike.

4. The office of county superintendent of schools being an office created by the Constitution, it was incompetent for the legislature to prescribe by Political Code, Section 1744, as an additional qualification to those prescribed by the Constitution, that an aspirant to such office should be the holder of a teacher's certificate of the highest county grade.

*Appeal from District Court, Teton County; D. F. Smith, Judge.*

ACTION by the state, on relation of Fannie E. Chenoweth, against Rebecca Acton. From a decree in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Mr. James W. Freeman,* for Appellant.

*Mr. George H. Stanton,* for Respondent.

MR. COMMISSIONER CALLAWAY prepared the following opinion for the court:

This action was brought by the state of Montana, on the relation of Fannie E. Chenoweth, against Rebecca Acton, to try title to the office of county superintendent of schools for Teton county, the relator claiming that the defendant had intruded into and usurped the office, and asking that she be ousted and excluded therefrom. The defendant answered, denying the material allegations of the complaint; pleaded affirmatively her own right to the office, the relator's lack of right and ineligibility thereto, and prayed that she (the defendant) be decreed entitled thereto.

The relator, Chenoweth, was elected at the general election in the year 1900, and within the time allowed by law qualified and entered upon her office, which she has continued to hold ever since. At the general election held in the year 1902 the defendant, Acton, and one Brown were opposing candidates for the office. Both received an equal number of votes therefor. There being no election, the county commissioners of Teton county appointed the defendant to the office, whereupon she assumed to qualify and discharge the duties thereof. The lower court rendered judgment for relator. Defendant moved for a new trial, which was denied, whereupon she appealed from the judgment and the order denying her a new trial.

The first question presented is, was there a vacancy when the county commissioners made the order appointing the defendant? One of the provisions of Section 5, Article XVI, of the Constitution, is that there shall be elected in each county one county superintendent of schools. It also declares: "Persons elected to the different offices named in this section shall hold their respective offices for the term of two years, and until their successors are elected and qualified. Vacancies in all county, township and precinct offices, except that of county commissioners, shall be filled by appointment by the board of county commissioners, and the appointee shall hold his office until the next general election."

Section 1101 of the Political Code provides that an office becomes vacant on the happening of certain events therein enumerated, neither of which relates to the contingency of a tie vote. In construing a section identical with 1101, *supra*, the court said in *Rosborough* v. *Boardman,* 67 Cal. 116, 7 Pac. 261: "An office becomes vacant on the happening of any of the events enumerated in Section 996 of the Political Code, among which the event relied on in this case is not mentioned. The enumeration in the Code must be held to be exclusive." Citing *People* v. *Tilton,* 37 Cal. 621; *Stratton* v. *Oulton,* 28 Cal. 45, and *People* v. *Bissell,* 49 Cal. 411.

"The word 'vacancy,' as applied to an office, has no technical meaning. An office is not vacant so long as it is supplied, in the manner provided by the Constitution or law, with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant, in the eye of the law, whenever it is unoccupied by a legally qualified incumbent, who has a lawful right to continue therein until the happening of some future event. *Stocking* v. *State*, 7 Ind. 326; *Collins* v. *State,* 8 Ind. 344; *Akers* v. *State*, 8 Ind. 484; *State* v. *Bemenderfer*, 96 Ind. 374; *Gosman* v. *State, supra* [106 Ind. 203, 6 N. E. 349]; *Butler* v. *State,* 20 Ind. 169; *People* v. *Tilton,* 37 Cal. 614; *State* v. *Lusk,* 18 Mo. 333; *Commonwealth* v. *Hanley,* 9 Pa. St. 513." (*State* v. *Harrison,* 113 Ind. 434, 16 N. E. 384, 3 Am. St. Rep. 663.)

In appointing the defendant, the county commissioners assumed to act under the provisions of Section 1171, Political Code, which reads, in part, as follows: "In case of a tie vote for clerk of the district court, county attorney, or for any county officer except county commissioner, and for any township officer, the board of county commissioners must appoint some eligible person, as in case of other vacancies in such offices; and in case of a tie vote for county commissioner, the district judge of the county must appoint an eligible person to fill the office, as in other cases of vacancy." Section 1171 does not in terms declare that a vacancy in office shall occur when there has been no election to the office by reason of a tie vote. Section 1101, as we have seen, defines "vacancies," and is exclusive. But in view of the constitutional provision it would not make any difference if the legislature had provided that a failure of election by reason of a tie vote should cause a vacancy at the expiration of the two years for which the county officers are elected, for, by the terms of the Constitution, they "shall hold their offices for the term of two years, *and* until their successors are elected and qualified." (Constitution, Article XVI, Section 5.) Under this section, it is clear that the relator in this case was entitled to hold her office for the term of two years, and it is equally

clear that she is entitled to hold it until her successor is elected
and qualified.    Indeed, it is not only her right, but it is her
duty to do so.   (*State ex rel. Thayer* v. *Boyd,* 31 Neb. 682, 48
N. W. 739, 51 N. W. 602; *People* v. *Hardy,* 8 Utah, 68, 29
Pac. 1118.)

Under the provision of the Constitution which we are con-
sidering, the right of a duly elected and qualified officer to hold
his office until his successor is elected and qualified is as much
a part of his term as are the two years specifically mentioned.
(*People* v. *Green,* 1 Idaho, 235.)

In *Kimberlin* v. *State,* 130 Ind. 120, 29 N. E. 773, 14 L. R.
A. 858, 30 Am. St. Rep. 208, the court said: "The adjudicated
cases seem to be harmonious in holding that, where one is law-
fully in the possession of an office under a constitutional or
statutory provision to the effect that he shall hold until his suc-
cessor is elected and qualified, his right to hold over continues
until a qualified successor has been elected by the same elec-
toral body as that to which such incumbent owes his election, or
which by law is entitled to elect a successor.   *Gosman* v. *State,*
106 Ind. 203, 6 N. E. 349; *State* v. *Lusk,* 18 Mo. 333; *People*
v. *Tilton,* 37 Cal. 614; *Ex parte Lawhorne,* 18 Grat. 85; *John-
son* v. *Mann,* 77 Va. 265; *State* v. *Jenkins,* 43 Mo. 261; *State*
v. *Harrison,* 113 Ind. 434, 16 N. E. 384, 3 Am. St. Rep. 663."

All elections by the people shall be by ballot.   (Constitution,
Article IX, Section 1.)

The policy of the provision that certain elective officers shall
hold their offices until their successors are elected and qualified
rests upon the theory, that in case the electoral body fails to dis-
charge its functions, it is wiser and more prudent to authorize
the incumbent to hold over rather than that a vacancy should
occur, to be filled by the appointing power.   (*State* v. *Harrison,*
113 Ind. 434, 16 N. E. 384, 3 Am. St. Rep. 663.)

It is significant that Section 5 of Article XVI, *supra,* pro-
vides that an elective officer shall hold until his successor is
elected and qualified, while one appointed to fill a vacancy holds

only until the next general election. The Constitution recognizes that vacancies will inevitably occur, and provides how they shall be filled. What are vacancies, within the meaning of the constitutional words, is not clear. It was, of course, not necessary to provide expressly that vacancies may occur through the processes of nature. It was contemplated that vacancies might occur because of misconduct or malfeasance in office. For such causes all officers not liable to impeachment shall be subject to removal in such manner as may be provided by law. (Constitution, Article V, Section 18.) But whatever may or may not be vacancies, it is plain that there was none in the office of county superintendent of schools for Teton county when the county commissioners attempted to appoint the defendant to succeed the relator. (*People* v. *Lord,* 9 Mich. 227; *Lawrence* v. *Hanley,* 84 Mich. 399, 47 N. W. 753; *State ex rel. Everding* v. *Simon,* 20 Ore. 365, 26 Pac. 170; *Eddy* v. *Kincaid,* 28 Ore. 537, 41 Pac. 156, 655 ;*State ex rel. Henderson* v. *Burdick,* 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266; *People* v. *Osborne,* 7 Colo. 605, 4 Pac. 1074; *People* v. *Whitman,* 10 Cal. 38; *People* v. *Tilton,* 37 Cal. 614; *People* v. *Hammond,* 66 Cal. 654, 6 Pac. 741; *People* v. *Edwards,* 93 Cal. 153, 28 Pac. 831; *State* v. *Boucher,* 3 N. D. 389, 56 N. W. 142, 21 L. R. A. 539.)

The case of *Adams* v. *Doyle,* 139 Cal. 678, 73 Pac. 582, is inapplicable to the one at bar.

It may not be amiss to say that the invalidity of Section 1171, Political Code, becomes more apparent when it is analyzed with reference to other constitutional provisions. (See Sections 1, 2, Article VII; Section 9, Article VIII; Section 4, Article XVI.)

We now come to the second point in the case. It is asserted that relator is not eligible to hold the office of county superintendent of schools, because when she was elected she did not possess the qualifications required by the statute, in this: She was the holder of only a second-grade certificate, whereas the statute prescribes that "no person shall be deemed legally qualified for

the office of county superintendent unless he or she holds a certificate of the highest county grade, is a citizen of the United States, has resided one year next preceding the election in this state, and one year in the county in which he is a candidate, and has had twelve months' successful experience in teaching in the public schools of this state.  *  *  *  "  (Political Code, Section 1744.)  This section applies to men and women alike, and this fact must be borne in mind.

Section 2, Article IX, of the Constitution, declares that "every male person of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all general elections and for all officers that now are or hereafter may be elective by the people and upon all questions which may be submitted to the vote of the people: First, he shall be a citizen of the United States; second, he shall have resided in this state one year immediately preceding the election at which he offers to vote, and in the town, county or precinct such time as may be prescribed by law."  Section 10 of Article IX declares: "Women shall be eligible to hold the office of county superintendent of schools or any school district office, and shall have the right to vote at any school district election."  Section 11 of Article IX declares:  "Any person qualified to vote at general elections and for state officers in this state, shall be eligible to any office therein except as otherwise provided in this Constitution, and subject to such additional qualification as may be prescribed by the legislative assembly for city offices and offices hereafter created."

An examination of the Constitution discloses that it prescribes no other qualifications for a county superintendent of schools than those provided for in Sections 10 and 11; that is, the person must be either a woman, or a "person qualified to vote at general elections and for state officers in this state." Additional qualifications are prescribed by the Constitution for certain other officers.  The latter part of Section 11 cannot apply, because the office of county superintendent of schools is a

creation of the Constitution. The Constitution has spoken, and it has prescribed the qualifications required of a county superintendent. The legislature may not supplement the constitutional pronouncement upon this subject. The maxim *"expressio unius est exclusio alterius"* applies.

It is earnestly argued that a person who holds the office of county superintendent should be one of learning and experience —one possessing especial professional attainments; that the statute is salutary and in accordance with the best interests of the public schools. All this is doubtless true, but this argument should be addressed to the legislature, which has the power to submit constitutional amendments to the people, and not to a court. If there be unwisdom in the law, the courts have not the power to correct it. They must declare the law as they find it. The people have reserved to themselves the right to select their county superintendents from women and the general body of voters. If they desire to change the fundamental law, the way is open to them to do so conformably to their will.

It follows that the judgment and order should be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are affirmed.

MR. JUSTICE MILBURN: I concur. If it were not for the fact that the defendant interposed a counterclaim demanding ouster of the plaintiff, and if the court had not adjudicated the defendant's claim to the office upon her said counterclaim, I would not concur, but would hold that the action should have been dismissed for the reason that the record, outside of the complaint of plaintiff, clearly shows that plaintiff never was interfered with by the defendant in the performance of her (the plaintiff's) duties as superintendent of schools. She swears in her testimony, "I was not interfered with by Miss Acton in the conduct of my office at all." Her cause of action, if she have any, is as it appears from the evidence, against the commission-

ers and the treasurer, who, it is alleged, refused to recognize the plaintiff or pay her.

MR. JUSTICE HOLLOWAY, not having heard the argument, takes no part in this decision.