STATE EX REL. JONES, RELATOR, *v.* FOSTER, DEFENDANT.

(No. 2,774.)

(Submitted October 30, 1909. Decided November 8, 1909.)

[104 Pac. 860.]

*Quo Warranto—Constitutional Law—Clerks of District Court— Term of Office—Elections—Tie Vote—Vacancy—Power of County Commissioners to Fill.*

Judges and Clerks of District Courts—Terms of Office—Constitutional Limitation.
1. Section 12, Article VIII of the Constitution provides, *inter alia,* that the term of office of district judge shall be four years, "except that the district judges first elected shall hold their offices only until the general election in the year 1892, *and until their successors are*

*elected and qualified."* Section 18, of the same Article, declares that the clerk of the district shall be elected at the same time and for the same term as the district judge. *Held,* on *quo warranto,* that under these provisions the terms of these judicial officers are strictly limited to four years, and that the words "and until their successors are elected and qualified" refer to those officers only who were first elected after the adoption of the Constitution, and have no application to those thereafter chosen.

Clerk of District Court—Term of Office—Elections—Tie Vote—Vacancy—Power of County Commissioners to Fill.

2. Under the rule stated in the above paragraph, a vacancy occurred, by operation of law, in the office of the clerk of the district court upon the expiration of the term of the then incumbent, where by reason of a tie vote the electors failed to choose his successor, which vacancy the board of county commissioners were authorized to fill by appointment, under section 457, Revised Codes.

ORIGINAL PROCEEDINGS in the nature of *quo warranto* by the state, on the relation of Lorin T. Jones, against Fred H. Foster. Judgment for relator.

*Messrs. Hatthorn & Brown* filed a brief in behalf of Relator; *Mr. Fred H. Hatthorn* argued the cause orally.

In behalf of Respondent there was a brief and oral argument by *Messrs. Gunn & Rasch.*

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an original proceeding in the nature of *quo warranto* to determine the title to the office of clerk of the district court in and for Yellowstone county. The relator is, and was at the times mentioned hereinafter, an elector residing in Yellowstone county. He was voted for as the regular candidate of the Republican party at the general election held on November 3, 1908, to succeed Fred H. Foster, who had been elected at the general election held on November 8, 1904, for the term of four years. Nat G. Carwile was the candidate of the Democratic party. Upon a canvass of the vote by the commissioners of the county, on November 10, 1908, it was found that the relator had received a total of 1,584 votes as against a total of 1,574 received by Carwile, and thereupon there was issued to him a certificate

showing that he had been elected.  He in due time qualified to assume the office on the first Monday in January, 1909, the time at which Foster's term expired, by taking his official oath and filing the bond required by law.  In the meantime Carwile instituted a contest, claiming that, notwithstanding it appeared from the face of the returns that the relator had received the highest number of votes, he himself had, in fact, received the highest number, and was entitled to the office.  Upon a trial in the district court, it was found that the relator had received a total of 1,575 votes, and that Carwile had received a total of 1,577.  Judgment was thereupon entered declaring the latter entitled to the office.  Upon appeal to this court, it was found and adjudged that each candidate had received a total of 1,577 votes, and hence that neither had been elected.  The district court was directed to vacate its judgment and to render judgment in accordance with the conclusion announced by this court. (*Carwile* v. *Jones*, 38 Mont. 590, 101 Pa. 153.)  Judgment was accordingly entered by that court on July 6, 1909.  During the litigation Foster continued to hold the office and to perform the duties pertaining to it.  On July 7 the commissioners of the county, having concluded that the office had become vacant by reason of the tie vote and the expiration of the term for which Foster had been elected, under the authority vested in them by the statute in such cases (Revised Codes, sec. 457), appointed the relator to serve as clerk until the next general election, the appointment to take effect immediately, and issued to him a certificate.  Having duly qualified as required by law, on July 9 he attempted to assume the office, but was prevented from so doing by Foster, who claimed that he was entitled to hold it until his successor had been regularly elected by the people at a general election.  The complaint, alleging the foregoing facts, demands judgment that the relator is entitled to the office by virtue of his appointment, together with the salary appertaining thereto, since the date of his appointment, and for such further relief as to the court may seem proper.  The defendant made appearance in this court by general demurrer.  The question

submitted for decision is whether or not, when an election to fill this office results in a tie vote, there is a vacancy in the office, and the commissioners of the county are vested with the power under the statute and the provisions of the constitution applicable to fill it by appointment.

Section 457, *supra,* declares, among other things: "In case of a tie vote for clerk of the district court, county attorney, or for any county officer except county commissioner, and for any township officer, the board of county commissioners must appoint some eligible person, as in case of other vacancies in such offices; and in case of a tie vote for county commissioner, the district judge of the county must appoint an eligible person to fill the office, as in other cases of vacancy." In adopting this enactment, the legislature assumed that under the provisions of the Constitution the term of any one of the various officers enumerated expires, and the office becomes vacant, whenever an election results in a tie vote between the candidates for that office, and that some provision was necessary in order to fill the office. In order, also, that the office might not be without a temporary incumbent, or *locum tenens,* to serve the convenience of the public in the meantime and until an appointment could be made or an election held, it provided further that "every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified." (Revised Codes, sec. 355.) It is not important here to inquire into the validity of the latter provision. For present purposes we shall assume that the legislature had the power to enact it. Nor shall we question the correctness of the rule, though there is some diversity in the decisions of the courts upon the subject (Mechem's Public Officers, secs. 396, 397; 1 Smith's Modern Law of Municipal Corporations, sec. 169; McCrary on Elections, 4th ed., sec. 349), that where there is no such statutory provision, and the Constitution contains no express or implied prohibition, the incumbent may lawfully continue as *locum tenens* to perform the duties of the office until a successor has been elected or appointed in the manner provided by law. The right of Foster to hold this office

and discharge the duties attached to it prior to the appointment
of the relator is not involved in this inquiry. It may be sug-
gested, however, that for the protection of the public he should
be regarded as a *de facto* officer and his acts be upheld on this
ground.

When there is a clause in the Constitution providing that an
officer shall hold for a definite term and until his successor is
elected and qualified, the conclusion seems inevitable that, if
for any reason the people fail to elect his successor, there is no
vacancy, and he is entitled to hold over. This court, in *State
ex rel. Chenoweth* v. *Acton,* 31 Mont. 37, 77 Pac. 299, so held
with reference to the office of county superintendent of schools,
construing the clause referred to to mean that the term continues
until the people have chosen the successor in the usual way.
Counsel for defendant cite this case with confidence in support
of their contention that section 420 of the Revised Codes, declar-
ing that upon the happening of certain events, before the expira-
tion of the term, vacancies must be deemed to exist, is exclusive.
This contention will be noticed hereafter. The conclusion we
have reached upon the question involved here is predicated upon
the construction which we think should be given to the provisions
of the Constitution applicable. These are the following:

Section 12, Article VIII: "The state shall be divided into
judicial districts, in each of which there shall be elected by the
electors thereof one judge of the district court, whose term of
office shall be four years, except that the district judges first
elected shall hold their offices only until the general election in
the year one thousand eight hundred and ninety-two (1892),
and until their successors are elected and qualified. * * * "

Section 18, Article VIII: "There shall be a clerk of the dis-
trict court in each county, who shall be elected by the electors
of his county. The clerk shall be elected at the same time and
for the same term as the district judge. * * * "

Under the second of these provisions the term of office of the
clerk and the time at which he must be elected are made de-
pendent upon the term of office of the district judges and the

time at which they must be elected.   Hence the rule applicable
to the latter applies to the former.   That it was the intention of
the convention to limit the term of office of district judges to
four years seems clear, not only from the language employed
in section 12, but from the other provisions applicable to all
other judicial officers, including even justices of the peace.   In
adopting it the convention had three purposes in view:  (1) to
provide for the division of the state into districts; (2) to pro-
vide for district judges and to fix their term of office; and (3),
by way of exception, to fix the term of office of those first elected,
so that they would hold until the general election in 1892,
and until their successors should be elected and qualified.   But
for the exception those first elected would also have held for the
term of four years.   The purpose of it was to so adjust the
term of those first elected that thereafter the election would fall
regularly upon presidential years, and be uniform throughout
the state.   This purpose is manifested by the sixth paragraph
of Ordinance 2, wherein provision is made for the election of
the first judges, and declaring that their term should expire on
the first Monday in January, 1893, "except as otherwise pro-
vided."   This latter provision, in declaring that the term of the
judges first elected should expire on the first Monday in Janu- ·
ary, 1893, is apparently inconsistent with the exception clause
of section 12, *supra*, but this condition does not affect the ques-
tion at issue here.   The ordinance became obsolete after the first
election; its purpose being merely to provide for the election
and to prescribe the terms of office of all officers elected to serve
first after the state was admitted into the Union.

The contention of counsel for defendant is that the clause
"and until their successors are elected and qualified," in section
12, *supra*, is to be read with the first clause of the section, and
that it must follow under the rule stated in *State ex rel. Cheno-
weth* v. *Acton, supra*, that the term of office of district judges,
and hence of clerks of district courts, is not limited strictly to
the period of four years.   This cannot be so, because the first
clause containing the general provision refers to the judge of

each district distributively and in the singular number, whereas
the first part of the exception clause refers to the judges col-
lectively in the plural number, while the demonstrative pronoun
"their" in the last clause takes the same number.  In the use
of the demonstrative "their," the convention evidently had in
mind the judges first elected, and no others.  Taking the lan-
guage just as it stands and noting the grammatical construction
of the section, giving to each clause its logical sequence and
manifest reference, it is clear that the last clause forms a part
of the exception, and does not otherwise limit or qualify the
general clause.  To avoid the conclusion, counsel invoke the fa-
miliar rule that the office and effect of an exception is to take
out of an enactment something which otherwise would be a part
of the subject matter of it, and contend that the exception as to
the judges first elected is manifestly intended to apply to the
term of office alone, and not to the right to hold over, because
otherwise there is nothing in the general clause on the subject
of holding over upon which the exception can operate; and hence
that, by construing the last clause to apply only to the judges
first elected, the exception is made to create a new right not
otherwise provided for, and one which would have no existence
but for the exception.  This we do not think is the result.  The
general clause, standing alone, would have made the term of all
judges four years.  The exception merely takes out of this gen-
eral provision those first elected, thus creating a separate class
for a temporary purpose only, and fixing the term of office, which
would not otherwise be so fixed as to effect this purpose.  We
are fortified in our view of the section by the provisions fixing
the term of other judicial officers.  Section 7 of the same Article
declares that the term of the justices of this court shall be six
years, except as otherwise provided.  In a following section the
terms of those first elected are fixed, and it is declared that each
shall hold his office until his successor is elected and qualified.
In the same way, in section 9, the term of office of the clerk
of this court is fixed at six years, with the same exception as to
the one first elected embodying the clause authorizing him to

hold over until his successor should be elected and qualified. The same provision is made for the office of county attorney in section 19, which fixes the term for two years, and makes the same exception. The term of justices of the peace is fixed at two years without the exception. (Section 20.) The only provision fixing the term of those first elected is found in the ninth paragraph of Ordinance 2, where it is provided that the term should extend to the first Monday in January, 1893. On the other hand, as to all other officers, except county commissioners whose terms are the subject of a special provision, it is provided that they shall hold until their successors are elected and qualified. The provision regulating the term of state executive officers in this respect is found in section 1 of Article VII; that applying to the term of all county officers is found in section 5 of Article XVI. There is thus manifested by the convention the intention that the terms of the officers of the state and county governments shall continue until the election of their successors by the people at general elections, as held in *State ex rel.· Chenoweth* v. *Acton, supra;* whereas, those of judicial officers shall end at the expiration of a definitely fixed period. Why this course should have been pursued, or why the exception should have been made as to those judicial officers first elected, is not clear; but that it was the purpose cannot be questioned, when all the provisions touching both classes of officers are examined and construed according to the rule prescribed by the Constitution itself (section 29, Article III), viz., that "the provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

There are no other provisions than those cited above pertinent to the subject now under consideration. Hence the provisions fixing the terms of judicial officers must be held to be exclusive, with the result that vacancies occur by operation of law upon the expiration of the terms designated; and this is so, even if the people have failed to elect their successors. To this situation section 420, Revised Codes, *supra,* can have no application, for two reasons: In the first place, by its own terms it refers only

to vacancies occurring "before the expiration of the term" upon the happening of any one of the events enumerated. It does not, therefore, contemplate a vacancy which may occur for any other cause. In the second place, if it could be construed to include all causes by reason of which vacancies may occur, it would impliedly exclude vacancies occurring upon the expiration of the term when there has been a failure by the people to elect a successor, with the result that the incumbent, who should go out, would hold over notwithstanding the implied prohibition in the Constitution.

In *State ex rel. Chenoweth* v. *Acton,* section 457, *supra,* was declared invalid in so far as it was intended to apply to those officers who are authorized by the Constitution to hold until their successors elected by the people are qualified to succeed them; and this holding was correct. But, in so far as the opinion contains *dicta* which may be construed to the effect that it is invalid as applied to the office of the clerk of the district court, it must be regarded as suggestive merely, and not controlling. In construing section 420 the court accepted the view adopted by the supreme court of California upon an identical provision in the Code of that state in *Rosborough* v. *Boardman,* 67 Cal. 116, 7 Pac. 261, and other cases. In *People ex rel. Sweet* v. *Ward,* 107 Cal. 236, 40 Pac. 538, however, the same court held that when the successor to the office of district attorney had been elected and qualified, but died before the time arrived at which he might assume the office, there occurred a vacancy not contemplated by the statute. So it was held, in *Adams* v. *Doyle,* 139 Cal. 678, 73 Pac. 582, that, where one elected to the office of sheriff failed to qualify by taking the oath and filing the bond required by law, the office became vacant upon the date upon which he might have taken it, and therefore that the board of supervisors had properly appointed a person to fill the vacancy. To the same effect is the holding, in *Campbell* v. *Board of Supervisors,* 7 Cal. App. 155, 93 Pac. 1061, where the election for the office of district attorney had been declared void. It is to be noted that in each of these cases the decision rests upon the

meaning given to the term "incumbent"; the court holding that the word is broad enough in its meaning to include a person who had been duly elected, but for any reason had failed to take the office. To the same effect is the holding in *People ex rel. Mattison* v. *Nye,* 9 Cal. App. 148, 98 Pac. 241, where the term "incumbent" was held to include one who had died after the election, but before notice of the result. In *People ex rel. Bledsoe* v. *Campbell,* 138 Cal. 11, 70 Pac. 918, the same court, without referring to the statute, held that under the section of the Constitution fixing the term of office of judges of the superior court at six years, a vacancy occurred at the expiration of the term, though a successor had not been elected. In our opinion, these cases virtually overrule the case of *Rosborough* v. *Boardman* and the other cases cited in the discussion in *State ex rel. Chenoweth* v. *Acton,* and render them of doubtful authority.

Since a vacancy, within the meaning of the Constitution, occurred at the expiration of Foster's term, by reason of the tie vote and the consequent failure of the people to elect, the appointment of the relator was properly made, and he became, upon his qualification pursuant thereto, entitled to the office and salary and emoluments attached to it. The Constitution (section 34, Article VIII) vests in the board of county commissioners the power to appoint in such cases, and section 457, Revised Codes, *supra,* is, in so far as concerns this office, a valid exercise of power by the legislature to render the constitutional provision effective.

The result is that the demurrer must be overruled and judgment entered that the relator is entitled to the office and its salary and emoluments from the date of qualification under his appointment. It is so ordered.

*Judgment for relator.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

Rehearing denied, December 7, 1909.