MARCELLUS, RESPONDENT, v. WRIGHT ET AL., APPELLANTS.

(No. 4,878.)

(Submitted September 26, 1921. Decided November 14, 1921.)

[202 Pac. 381.]

*District Judges—Term of Office—Expiration of Term—Invalidity of Subsequent Acts—Jurisdiction—Office and Officers.*

District Judges—Term of Office—Expiration—Subsequent Acts Invalid.
   1. Where the term of a district judge expired at midnight on December 31, 1920, the day preceding the first Monday in January following the general election at which his successor had been elected, an order denying a motion for a new trial, made by him on December 31 but which he was prevented from lodging with the clerk because, when attempting to do so, he found the office closed for the day, handed by him to the clerk on January 3, 1921, with direction to enter it as of December 31, was his personal act and void, he then no longer being vested with judicial authority.

Office and Officers—Authority Ceases upon Expiration of Term.
   2. When the duration of the term of office is specified in the statute, and an officer is elected to serve out the term, his power and

authority thereupon *ipso facto* cease, unless he is authorized by some specific provision of organic law to hold over.

Same—Terms—Statutes—Construction.

3. If the language of a statute specifying the term of office of an official is ambiguous, the interpretation which limits the term to the shortest time should be adopted.

Same—Term of Office—"Until"—Definition.

4. The word "until" within statutes fixing terms of office, is a restrictive word, and is of limitation; its office being to fix some point of time upon the arrival of which what precedes will cease to exist.

District Courts—May Correct Minutes.

5. The district court may correct its minutes to speak the truth.

Same—Correcting Minutes—Consideration of Affidavits Proper.

6. On motion to annul an order denying a new trial on the ground that it was made by the judge after expiration of his term of office, his successor, in deciding whether his predecessor made the order after his term had expired, was not limited to the minutes of the court, but could consider the facts disclosed by the affidavits filed in support of and in opposition to the motion.

Officers—*De facto* and *De Jure.*

7. Where an officer *de jure* is in possession, no other person can be an officer *de facto,* with respect to that office, so as to render an act of the latter officially valid.

*Appeal from District Court, Fergus County; Rudolph Von Tobel, Judge.*

Action by Mary A. Marcellus against Frank E. Wright and others. From an order annulling an order overruling motion for new trial, the defendants appeal. Affirmed.

*Mr. Sidney Sanner* and *Messrs. Belden & De Kalb,* for Appellants, submitted a brief; *Mr. Sanner* argued the cause orally.

The record is barren of any justification for the order in question. On the face of the record the situation here presented has no exact precedent and few analogies. Certified by the judge who made the order appealed from as "containing all the evidence submitted and considered by the court in the making of said ruling," the record shows the bald fact—and nothing more—that, because one of the judges of the tenth judicial district court, on a certain date, by formal opinion and order, denied a motion for new trial duly submitted to him for decision, but did not file that order or procure a minute entry thereof to be made until the third day thereafter, another

judge of the same court who never had cognizance of the cause claims and assumes to exercise the authority to strike that order from the files and to annul the minute entry of the same.

Confessedly, Judge Briscoe, at the time respondent's motion for new trial was submitted to him, was a judge of the district court of Fergus county, and presumptively he was such judge when he denied the motion. His act was the act of the court; through him the court had functioned, and no authority short of this court could review or disturb his act. Authorities are not necessary to sustain propositions so elementary, but see: *State ex rel. Little* v. *District Court,* 49 Mont. 158, 141 Pac. 151; Spelling on New Trial and Appeal, sec. 27.

It will doubtless be suggested, however, that the district court judicially knew and that this court judicially knows that Judge Briscoe had ceased to be a judge of the tenth judicial district court at the time his order denying respondent's motion for new trial was filed by the clerk, to-wit, at 9:15 A. M. of January 3, 1921. If the court knew any such thing there is nothing in the record to show it, but the clear implication of the record is that no such consideration was taken into account in making the ruling. Doubtless under Section 7888, Revised Codes, this court knows that the tenth judicial district has two district judges; that Honorable Jack Briscoe was one of these; and that Honorable Roy E. Ayers and Honorable Rudolph Von Tobel are now such judges; but either of these officials could have deferred his accession until after the first Monday (or third day,) of January, 1921, in which event it was the duty of Judge Briscoe to remain as *locum tenens* until his successor had indeed succeeded. (Rev. Codes, sec. 355; *State* v. *Foster,* 39 Mont. 583, 104 Pac. 860; *State* v. *Page,* 20 Mont. 238, 50 Pac. 719.) And in that event he was judge *de facto,* whose acts were valid so far as we are here concerned. (Rev. Codes, sec. 8177; *State* v. *Foster, supra; Carli* v. *Rhener,* 27 Minn. 292, 7 N. W. 139; *Humel* v. *Hoogendorn,* 5 Alaska, 25; *Cromer* v. *Boinest,* 27 S. C. 436, 3 S. E. 849; *Oppenheim* v. *Pittsburgh*

*Ry. Co.,* 85 Ind. 471; *Merced Bank* v. *Rosenthal,* 99 Cal. 39, 31 Pac. 849, 33 Pac. 211; *Adams* v. *Mississippi State Bank,* 75 Miss. 701, 23 South. 395; *Hamlin* v. *Kassafer,* 15 Or. 456, 3 Am. St. Rep. 176, 15 Pac. 778; *Sheehan's Case,* 122 Mass. 445, 23 Am. Rep. 374; *Woodside* v. *Wagg,* 71 Me. 207.)

What the facts were with respect to the actual accession of a successor to Judge Briscoe the record does not disclose. It does not answer to say the lower court knew: There are things of which the lower court may have judicial knowledge but of which this court, unless that knowledge be in some manner brought into the record, must remain ignorant; as for instance, provisions of the rules of the lower court (*Bowen* v. *Webb,* 34 Mont. 61, 85 Pac. 739); the division of jurisdiction among the judges thereof (*Fenn* v. *Reber,* 153 Mo. App. 219, 132 S. W. 627); or the local conditions, however notorious, under which it functions (*Detroit Ry. Co.* v. *Crane,* 50 Mich. 182, 15 N. W. 73; *McCorkle* v. *Driskell* (Tenn.), 60 S. W. 172); and the circumstances necessarily here involved are of like character.

On the face of the record the order of Judge Briscoe was made, filed and entered on the minutes December 31, 1920. The correctness of this record was assailed by affidavit, and the ultimate ruling rests upon affidavit evidence alone. The minute entry whenever it was made, correctly stated the fact that respondent's motion for new trial had been overruled on December 31, 1920, and the lower court should have disregarded all affidavit evidence to the contrary. (*State ex rel. Brown* v. *District Court,* 55 Mont. 158, 174 Pac. 601.)

This jurisdiction has long been familiar with the rule that a minute entry directing judgment to be entered is not a judgment, that the recordation of the judgment is not the judgment, but that the judgment is the decision of the court finally disposing of the case. It is quite true that in the case of a judgment, and for the purposes, as, for instance, appeal, the entry is necessary, but the judgment is rendered when the court or

judge has given final decision. (*Lisker* v. *O'Rourke*, 28 Mont. 129, 72 Pac. 416, 755; *Butte & M. Co.* v. *Montana, O. P. Co.*, 27 Mont. 152, 69 Pac. 714.) To a stronger degree in the case of an order, there is a clear distinction between the making of an order and its entry. The order is made when the court announces it. It is entered when it is placed of record by the clerk. (*State* v. *Bowser*, 21 Mont. 133, 53 Pac. 179; 20 Ruling Case Law, 512.) And with reference to orders similar or more exacting than the one now before this court, it has been repeatedly declared that an order in writing is made when it is signed by the judge. (*Niles* v. *Edwards*, 95 Cal. 41, 47, 30 Pac. 134; *Crim* v. *Kessing*, 89 Cal. 478, 23 Am. St. Rep. 491, 26 Pac. 1074; *Holt* v. *Holt*, 107 Cal. 258, 40 Pac. 390; *Roberts* v. *White*, 7 Jones & S. (N. Y.) 272.)

That, under statutory conditions similar to ours, the filing of the order has exactly the same effect as its entry upon the minutes, that neither need be done at any particular time, and that it is no more fatal to the order, if made, that it was not filed before the expiration of the judge's term than that it was not entered on the minutes until after such expiration, has also been judicially declared. (*Von Schmidt* v. *Widber*, 99 Cal. 514, 515, 34 Pac. 109.)

The same rule is applied to orders, including orders upon motion for new trial, in the following cases: *State* v. *Bowser*, 21 Mont. 133, 53 Pac. 179; *Bartolet* v. *Faust*, 5 Phila. (Pa.) 316; *Storrie* v. *Shaw*, 96 Tex. 618, 75 S. W. 20; *Babcock* v. *Wolf*, 70 Iowa, 676, 28 N. W. 490; *Von Schmidt* v. *Widber*, 99 Cal. 511, 517, 34 Pac. 109; *Manneck Mfg. Co.* v. *Smith etc. Mfg. Co.*, 2 City Ct. Rep. (N. Y.) 37; *Reed* v. *Higgins*, 86 Ind. 143; *Bauman* v. *New York Cent. etc. Ry. Co.*, 10 How. Pr. (N. Y.) 248; *Sieber* v. *Frink*, 7 Colo. 148, 2 Pac. 901; *Brunson* v. *Henry*, 140 Ind. 455, 39 N. E. 259; *Davis* v. *Shaver*, 61 N. C. 18, 91 Am. Dec. 92; *Roberts* v. *Wessinger*, 69 S. C. 283, 48 S. E. 248; *Rushton* v. *Woodham*, 68 S. C. 110, 46 S. E. 943.

*Mr. Ralph J. Anderson* and *Messrs. Wheeler & Baldwin*, for Respondent, submitted a brief; *Mr. Anderson* and *Mr. James H. Baldwin* argued the cause orally.

The purported order denying respondent's motion for new trial was made without jurisdiction. The fault in appellants' argument is based upon a failure to distinguish between the authority of the trial court and a judge thereof, an indiscriminate and improper use of the words "court" and "judge," and a failure to view the admitted facts in the light of the provisions of the Constitution and statutes of this state.

Under the provisions of our Constitution there is a well-defined distinction between a particular district court and the judges of that court. (*State ex rel. Grissom* v. *Justice Court,* 31 Mont. 258, 78 Pac. 498.) Their effect is to command all things requiring judicial action to be done by the court except in so far as it is otherwise expressly provided by the Constitution, and to prohibit the exercise of any judicial power by any officer or person unless the authority so to do is expressly given by the Constitution. (*Eustance* v. *Francis,* 52 Mont. 295, 157 Pac. 573.) As the right to rule on a motion for new trial is not given by the Constitution of this state to the judge of a district court, it follows that Judge Briscoe was entirely without authority, at chambers, to rule on respondent's motion for new trial. (Sec. 6290, Rev. Codes; *Eustance* v. *Francis, supra; McIntyre* v. *Northern Pac. Ry.,* 58 Mont. 256, 191 Pac. 1065.)

Sections 6314 and 6319, Revised Codes, define the powers of a judge at chambers, and it is settled law in this state that his powers at chambers in cases pending in the court of which he is a judge are limited to the disposition of proceedings enumerated in section 6314 and may not be extended to others not enumerated. (*State ex rel. Mannix* v. *District Court,* 51 Mont. 310, 152 Pac. 753; *McIntyre* v. *Northern Pacific Ry. Co., Eustance* v. *Francis, supra.*)

A motion for a new trial is a statutory remedy and can only be invoked in the manner, within the time, and upon the grounds provided for in the statutes; and this rule applies

indifferently to law and equity cases. (*Ogle* v. *Potter*, 24 Mont. 501, 62 Pac. 920; *State* v. *District Court*, 49 Mont. 595, 144 Pac. 159; *State* v. *Kelley*, 57 Mont. 123, 187 Pac. 637.) The application for a new trial must be made to the court in which the case was tried. (29 Cyc. 922; 14 Ency. Pl. & Pr. 902.) Ordinarily, the application should be heard and determined by the judge who presided at the trial. (29 Cyc. 922.) Nevertheless, unless it is otherwise provided by statute, it may be heard by any judge of the same court. (29 Cyc. 923.) There is no statute in this state requiring that the judge who tried the case shall sit on the hearing of the motion for new trial. And this court has held specifically that in this state a party has no absolute right to have a motion for new trial passed upon by the judge who tried the case. (*Hill* v. *Nelson Coal Co.*, 40 Mont. 1, 104 Pac. 876; *State* v. *District Court*, 33 Mont. 138, 8 Ann. Cas. 752, 82 Pac. 789.) A judge at chambers has no power to pass upon such a motion. (23 Cyc. 552; 4 Ency. Pl. & Pr. 348; *Hodgin* v. *Whitcourt*, 51 Neb. 617, 71 N. W. 314; *Accousi* v. *G. A. Stowers etc. Co.* (Tex. Civ. App.), 83 S. W. 1104; *Donly* v. *Fort*, 42 S. C. 200, 20 S. E. 51.) And surely a motion for new trial cannot be passed upon by a judge whose term of office has expired. (29 Cyc. 923.)

It would seem that any argument as to whether this court knows judicially that Judge Briscoe was out of office on Monday, January 3, 1921, is unnecessary; however, as appellant seems to place great stress upon this point, we offer for the consideration of the court authorities which seem conclusively to sustain the position that this court must take judicial notice of who were the judges of the trial court on that day. (15 R. C. L., p. 1106, sec. 37; 23 C. J., pp. 105, 106; *Vahle* v. *Brackenseik*, 145 Ill. 231, 34 N. E. 324; *Gross* v. *Wood*, 117 Md. 362, Ann. Cas. 1914A, 30–33, and note, 83 Atl. 337; *People* v. *Ebanks*, 120 Cal. 626, 52 Pac. 1078; *Kurtz* v. *Cutler*, 178 Cal. 178, 172 Pac. 590; *Apple* v. *Ellis*, 50 Okl. 80, 150 Pac. 1057; *Coburn* v. *Thornton*, 30 Idaho, 347, 164 Pac. 1012; *Board of Commissioners* v. *Shaffner*, 10 Wyo. 181, 68 Pac. 14.) As a

[61 Mont. 274.]

result the trial court knew and this court knows judicially that Judge Briscoe had ceased to be judge of the trial court prior to Monday, January 3, 1921, and that on that day he was entirely without authority to make any order of any kind in any case pending in the court over which he formerly presided. (*Broder* v. *Conklin,* 98 Cal. 360, 33 Pac. 212; *Connolly* v. *Ashworth,* 98 Cal. 205, 33 Pac. 60; *Schultz* v. *Winter,* 7 Nev. 130.)

The act of the clerk of the court on Monday, January 3, 1921, in filing the order as of December 31, 1920, and making the entry in the minutes as of that day, was entirely without authority and cannot give vitality to the purported order denying respondent's motion for new trial. A judge out of office is entirely without authority to make an order directing the filing or entry of any order *nunc pro tunc.* (*Accausi* v. *G. A. Showers etc. Co.* (Tex. Civ. App.), 83 S. W. 1104.) Where the court has omitted to make an order, which it might or ought to have made, it cannot afterward be entered *nunc pro tunc.* (29 Cyc. 1516; *Talbot* v. *Mack,* 41 Nev. 245, 169 Pac. 25; *Board of Control* v. *Mulertz,* 60 Colo. 468, 154 Pac. 742; *White* v. *East Side Lumber Co.,* 84 Or. 224, 161 Pac. 969, 164 Pac. 736; *Klein* v. *Southern Pac. Co.,* 140 Fed. 213; *Southern Pacific Co.* v. *Pender,* 14 Ariz. 573, 134 Pac. 289; *Chester* v. *Graves,* 159 Ky. 244, 166 S. W. 998.)

The trial court acted properly in granting respondent's motion. The order and entry made in the minutes of the court were made without jurisdiction and it was incumbent upon the trial court to purge the records of the same. (*Soliri* v. *Fasso,* 56 Mont. 400, 185 Pac. 322; *State ex rel. Smith* v. *District Court,* 55 Mont. 602, 179 Pac. 831; *Crawford* v. *Pierse,* 56 Mont. 371, 185 Pac. 315; *State ex rel. Mannix* v. *District Court,* 51 Mont. 310, 152 Pac. 753.)

MR. JUSTICE COOPER delivered the opinion of the court.

This action was commenced in the district court of Fergus county in and for the tenth judicial district. It was tried by

the court without a jury. Upon findings of fact and conclusions of law, the court entered judgment in favor of the
[1] defendants. On March 23, 1920, respondent filed her motion for a new trial, which was later argued, submitted, and by the court taken under advisement. By a writing entitled "Opinion on Motion for a New Trial" the court stated its reasons for refusing the motion, and ended with the declaration that a new trial was denied. While the memorandum bears date December 31, 1920, it was not filed by the clerk nor entered in the minutes until 9:15 o'clock Monday morning, January 3, 1921. On January 10 motion was made to strike the document from the files and to cancel its recordation on the ground that it was an attempt upon the part of the former judge to make judicial pronouncement of an order after his term of office had expired. On the same day there was filed, in support of the motion, an affidavit of the clerk of the court, setting forth the following facts: That on January 3, 1921, at 9:15 A. M., Honorable Jack Briscoe handed to him an order denying plaintiff's motion for a new trial, directed him to enter and file the same as of the date of December 31, 1920, and to make a minute entry on the records of Department No. 2 of the court denying the motion for a new trial as of the date of December 31, 1920; that pursuant to such direction, affiant made the entry as of date of December 31, and filed and entered the order denying the motion for new trial as of the date stated. On January 18, 1921, an affidavit of Honorable Jack Briscoe was filed, reading as follows: "That as one of the judges of the tenth judicial district of the state of Montana, in and for the county of Fergus, and the judge of Department 2 thereof, he tried the above-entitled action on its merits, and made findings of fact and conclusions of law therein in favor of the defendants and against the plaintiff; that the plaintiff then presented her motion for a new trial of said cause, and after argument of the respective counsel the motion for new trial was taken under advisement by the court; that on the thirty-first day of December, 1920, affiant as such judge de-

termined the said motion by overruling the same, and the court dictated and signed a memorandum opinion to that effect, which concludes, 'The motion for a new trial is overruled'; that on a memorandum sheet among other matters requiring disposition at the hands of the court, affiant had set down the title of court or some reference to the above-entitled case and had written thereon a notation to hand to the clerk of the court to the same effect; that about the hour of 5 o'clock (5) P. M., or shortly after that time, affiant took the said opinion and the said memorandum to the office of the clerk of court, but, finding the office locked and the clerk gone, concluded it would be just as well to hand it to the clerk the following day, January 1, 1921; that on the following day and on the second day of January, 1921, affiant did not find the clerk of court at his office, and he then handed the same to the clerk of court shortly after the office of the clerk of court had opened on the morning of the third day of January, 1921.'' On February 10, 1921, upon the record thus made, the court, presided over by Honorable Rudolph Von Tobel, elected to take the place of Honorable Jack Briscoe, and annulled the purported order. The defendants appeal from the order thus made.

We shall treat the proceeding as one to correct and purge the record by amendment of the order of Judge Briscoe refusing plaintiff a new trial. Was the direction to the clerk to enter the order the personal act of Judge Briscoe after he had lost judicial power by the lapse of his term as judge, or was it the judicial pronouncement of the court?

On the fifteenth day of February, 1917, there was but one district judge of the tenth judicial district. On that day an Act passed by the legislative assembly authorized the governor to appoint an additional judge for that district "to hold his office until the first Monday of January, 1919, or until his successor is duly elected and qualified." (Laws 1917, Chap. 35.) Pursuant thereto, on March 2 of that year, the governor appointed Honorable H. L. De Kalb to fill the office thus created. He resigned May 18, 1918. On November 5, 1918,

Honorable Jack Briscoe was elected to serve until the next general election. On November 9, 1918, he was appointed by the governor to serve until the term for which he was elected commenced.

In *State ex rel. Patterson* v. *Lentz*, 50 Mont. 322, 146 Pac. 932, the relator was appointed an additional judge for the fourth judicial district under the Act approved February 11, 1913. He claimed, among other things, that inasmuch as the commission issued to him stated that he was to hold the office until the first Monday in January, 1917, he was entitled to hold until that date, regardless of the fact that a general election, at which he was defeated for election by Honorable Theo. Lentz, had intervened between the two dates mentioned. The provisions of the Constitution and the law upon the subject are there given critical and exhaustive analysis by Chief Justice Brantly in behalf of this court. He proceeds: "Section 12 of Article VIII [of the Constitution] was considered in connection with other provisions of the Constitution, in *State ex rel. Jones* v. *Foster*, cited above [39 Mont. 583, 104 Pac. 860]. It was there said: 'In adopting it, the convention had three purposes in view: (1) To provide for the division of the state into districts; (2) to provide for district judges and to fix their term of office; and (3), by way of exception, to fix the term of office of those first elected, so that they would hold until the general election in 1892, and until their successors should be elected and qualified. But for the exception, those first elected would also have held for the term of four years. The purpose of it was to so adjust the term of those first elected that thereafter the election would fall regularly upon presidential years and be uniform throughout the state.' It was also held that the clause, 'and until their successors are elected and qualified,' is a part of the exception, and does not modify the clause definitely fixing the term of the judges to be subsequently elected. The result is that, upon the expiration of the four-year term, the office of district judge becomes vacant by operation of law."

A provision in the Constitution of California reading, ''The terms of such officers [district judges] shall commence on the first Monday of January next following their election,'' was given a like interpretation by the supreme court of that state, in *People ex rel. Bledsoe* v. *Campbell,* 138 Cal. 11, 70 Pac. 918, *Merced Bank* v. *Rosenthal,* 99 Cal. 39, 31 Pac. 849, 33 Pac. 732, *Broder* v. *Conklin,* 98 Cal. 360, 33 Pac. 211, and *Connolly* v. *Ashworth,* 98 Cal. 205, 33 Pac. 60. The first case is cited with approval in both the *Foster* and the *Lentz Cases,* and all of them are in complete accord upon the proposition. The two cases last cited hold emphatically that an act performed by a person whose term of office as district judge has expired is void and should be set aside.

From these authorities it is clear that the term for which Judge Briscoe was elected was definitely fixed, and as definitely limited to the last minute of the day next preceding the first Monday in January following the general election at which his successor was elected. This is so because the law will not tolerate the thought that the tenure of office can begin or end at a time other than that fixed by the authority creating the office, or in any manner other than that so provided. When [2] the duration of the term is specified in the statute, and an officer is elected to serve out the term, his power and authority thereupon *ipso facto* cease, unless he is authorized by some specific provision of organic law to hold over. (See *People* v. *Tieman,* 30 Barb. (N. Y.) 193; *Badger* v. *United States,* 93 U. S. 599, 23 L. Ed. 991 [see, also, Rose's U. S. Notes]; Mechem on Public Officers, sec. 396, and cases cited.)

Where the latter words are omitted, there is no right by which the incumbent can hold over the next general election, because the law favors the requirement that all officers, whenever possible, shall be elected by the people. (*State ex rel. Patterson* v. *Lentz, supra.*) This is evinced by the care exercised by all legislative bodies to guard against lapses, where holding over is not deemed necessary or desirable for the public good. ''Hence the provisions fixing the terms of judicial officers

must be held to be exclusive, with the result that vacancies occur by operation of law upon the expiration of the terms designated.'' (*State ex rel. Jones* v. *Foster, supra; State ex rel. McGowan* v. *Sedgwick,* 46 Mont. 187, 127 Pac. 94.) If the language employed were of doubtful meaning, that interpretation [3] which limits the term to the shortest time should be adopted. (Mechem on Public Offices and Officers, sec. 390; *Wright* v. *Adams,* 45 Tex. 134; *Smith* v. *Bryan,* 100 Va. 199, 40 S. E. 652.)

A careful reading of the entire Constitution reveals the remarkable fact that the declaration found in section 12 of Article VIII, prescribing that ''the terms of district judges shall be four years'' is all that is said in that instrument upon the subject. To reach a conclusion which satisfies the judicial mind and responds directly to the will of the convention, the Constitution and the ordinances attached to the former must be carefully examined for words best fitted to furnish the needed light. The provisions of section 7 of the same Article, fixing the terms of the members of this court, present an analogy of some service in solving the problem. It reads: ''The term of office of the justices of the supreme court, except in this Constitution otherwise provided, shall be six years.'' Then, in the next section, which provides the time to choose those first to be elected, will be found these words: ''At [the] first election the Chief Justice shall be elected to hold his office until the general election in the year one thousand eight hundred and ninety-two (1892), and one of the associate justices to hold office until the general election in the year one thousand eight hundred and ninety-four (1894); and the other associate justice to hold his office until the general election in the year one thousand eight hundred and ninety-six (1896), and each shall hold until his successor is elected and qualified.''

It will be noted that in each of the instances above, the word [4] ''until'' is used with the evident purpose of limiting each term to a definite period of time; and, bearing in mind the

exigencies always to be apprehended from defective election machinery, and public inconvenience attending vacancies in public office, there was added the following: "And each shall hold until his successor is elected and qualified." In section 9 of the same Article, too, we find the same exactness of expression in fixing the term of the clerk of this court, and the point in time and circumstance to which he should hold office. As further evidence plainly visible, the terms for which all state officers, except judicial officers, shall hold are limited in section 1 of the same Article VIII to four years, "beginning on the first Monday in January next succeeding" the general election following. While that section does not affect judicial officers, the language does serve to make all the other elective officers of the state begin their official duties at the same instant. So that, the words employed in section 6 of Ordinance No. 2, that "the terms of officers so elected shall begin when the state is admitted into the Union, and shall end on the first Monday in January, 1893," affect neither the intent nor object apparent throughout the Constitution and the ordinances to bring to a close the terms of district judges at 12 o'clock midnight preceding the first Monday in January following the election in presidential years. This construction makes complete harmony in the matter of the beginning and ending of the terms of all the state officers, without in the least shading the meaning of any of the language contained in either enactment.

The statute providing for an additional district judge in the tenth judicial district, and declaring that the appointee of the governor shall hold "until the first Monday in January, 1919," is entitled to respectful consideration by the courts. (*Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386; *State ex rel. Patterson* v. *Lentz, supra.*) And unless the time fixed by statute is so plainly at odds with that prescribed in the Constitution as to be wholly inconsistent with it, it is the duty of the court to give it such a construction as will enable it to have effect. Or to go a little further, when the conflict between the Act and the Constitution is not clear, the implication must

always be that no excess of authority has been intended by the legislature, and that the seeming differences can be reconciled.  The court will not go beyond the face of the law to seek grounds for holding it unconstitutional.  (Cooley's Constitutional Limitations, p. 225; *Stevenson* v. *Colgan,* 91 Cal. 649, 25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089.)  Thus, it seems, if we are at liberty to rely with any degree of confidence upon the legislative intent, the consideration is by no means all upon the side of the appellant.  The word "until" is a restrictive word, and is of limitation, in its ordinary and usual sense; and this is the meaning which should now be ascribed to it.  "Its office is to fix some point of time or some event upon the arrival or occurrence of which what precedes will cease to exist."  (*State ex rel. Rowe* v. *Kehoe,* 49 Mont. 582, 588, 144 Pac. 162.)

Counsel for appellant earnestly insist that the affidavits [5, 6] should not be considered for the reason that the minutes of the court furnish the only competent evidence respecting the regularity and validity of the order appealed from.  With this we cannot agree, for reasons which we will now proceed to give.  In the first place, it was competent for the court to correct the minutes to speak the truth; and it was competent for it to consider the affidavits disclosing the actual facts.  Second, upon appeals to this court the presumption must always be indulged that the action of the district court proceeded, not only according to law, but that it was done in the regular mode.  Section 7962 of the Revised Codes provides that all presumptions, other than those expressly made conclusive by statute, are satisfactory if uncontradicted; that they are denominated disputable presumptions which may be controverted by evidence.  By subdivision 15 it is presumed "that official duty has been regularly performed, and, 16, that a court or judge, acting as such, whether in this state, or any other state or county, was acting in the lawful exercise of his jurisdiction."  If we are to ascribe any force at all to these statutory presumptions, we may assume that Judge Von Tobel knew, both personally and

judicially, when he took office on the morning of January 3, 1921, that no entry denying the new trial was then in the minutes of Department No. 2 of the court, and that he had a right to base his ruling upon information so acquired. In this situation, therefore, we may not assume that the district court relied solely upon the affidavits in making the order in question. (*Ming* v. *Truett,* 1 Mont. 322.)

The affidavits are proof conclusive that the direction to the clerk was the personal act of Honorable Jack Briscoe because the lapse of his term of office had divested him of all judicial authority. (*Dalton* v. *Loughlin,* 4 Abb. N. C. (N. Y.) 187; *Connolly* v. *Ashworth, supra; Broder* v. *Conklin, supra.*)

Taking another step, counsel insist that the order to the clerk was the act of a judge *de facto,* and the absence of a showing [7] upon the record that Judge Von Tobel was actually present and performing the duties of judge of the court at 9:15 on the morning of January 3, 1921, is enough to render the act valid and unimpeachable. The fault in this argument lies in the fact that it ignores the usual presumption that Judge Von Tobel rightfully assumed that there could be no judge *de facto* while he was a judge *de jure.*

In Throop on Public Officers and Offices, section 641, the law is stated thus: "If the officer *de jure* is in possession—if he is officer *de jure* and also officer *de facto*—no other person can be an officer *de facto* with respect to that office; nor can two persons be officers *de facto* at the same time. There cannot be two incumbents at once; if one is in, the other is not." (*Hamline* v. *Kassafer,* 15 Or. 458, 3 Am. St. Rep. 176, 15 Pac. 778; *McCahon* v. *Commissioners,* 8 Kan. 442; *Boardman* v. *Halliday,* 10 Paige (N. Y.), 223; *Morgan* v. *Quackenbush,* 22 Barb. (N. Y.) 80; *Jewett* v. *McConnell,* 112 Ark. 291, 165 S. W. 954; *United States* v. *Alexander* (D. C.), 46 Fed. 728.)

The last cited case involved the validity of an order identical with the one before us. In reaching a conclusion fatal to its validity, the court made use of the following remarks: "Courts have sustained the acts of *de facto* officers only as a matter

of necessity, to avoid serious damage to those not at fault; but the encouragement of a careless practice on this subject would result in far greater injury than benefit. Rather is it better that it be understood that the acts and orders of those without the legal right to exercise official trust pass the ordeal of the closest scrutiny, and be ratified only so far as justified by public policy and necessity.''

For these reasons, the order appealed from is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Associate Justices Reynolds, Holloway and Galen concur in the result.

