No. 83-391

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA, ex rel., GARY E.
WILCOX and CHARLES BRADLEY,

Petitioners,

-vs-

DISTRICT COURT OF THE THIRTEENTH
JUDICIAL DISTRICT, THE HONORABLE
NAT ALLEN, HONORABLE C.B. SANDE and
THE HONORABLE ROBERT H. WILSON,

Respondents.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

For Petitioners:

Gary E. Wilcox & Charles Bradley argued,
Billings, Montana

For Respondents:

Hon. Charles Luedke, Dist. Judge, Billings, Montana
Hon. Diane G. Barz, Dist. Judge, Billings, Montana
Hon. William J. Speare, Dist. Judge, Billings
Hon. Robert Wilson, Dist. Judge, Billings, Montana
Hon. C. B. Sande, Billings, Montana
Hon. Nat Allen, Roundup, Montana

For Amicus Curiae:

Hon. Mike Greely, Attorney General, Helena, Montana
Kim Kradolfer argued, Asst. Atty. General, Helena
Moses Law Firm; Charles F. Moses argued, Billings,
Montana

---

Submitted: November 23, 1983

Decided: March 9, 1984

Filed: MAR 9 1984

*Ethel M. Harrison*
_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The principal question in this case is whether a retired district judge recalled to temporary active service by the Chief Justice pursuant to Article VII, Section 6(3) of the Montana Constitution and implementing statutes has authority to enter final judgment. We hold he has. Our reasoning follows.

Relators Wilcox and Bradley, respectively a public defender and the deputy county attorney of Yellowstone County, filed a petition for a writ of supervisory control in this Court seeking determination of this question. They alleged that upon request of the Chief District Judge of the Thirteenth Judicial District, the Chief Justice called retired District Judges C. B. Sande and Nat Allen to active service not exceeding ten days per month for a three-month period because of the volume and backlog of all matters, both civil and criminal. This order was entered by the Chief Justice "pursuant to Article VII, Section 6(3) of the Montana Constitution and statutes enacted in conformity therewith and in implementation thereof."

Thereafter Judge Robert H. Wilson, a district judge of the Thirteenth Judicial District and the presiding judge in the four criminal cases that are the subject of the petition, entered an order stating that he deemed himself disqualified in each of the four cases and invited retired Judge Sande to accept jurisdiction in one of the four cases and retired Judge Allen in the remaining three. Both retired judges accepted jurisdiction.

The petition challenged their jurisdiction in each of the four cases on the following grounds: (1) that retired judges are not "other judges" within the meaning of Article

VII, Section 6, of the Montana Constitution; (2) that retired judges are not empowered to enter final judgment in any cause, civil or criminal, under section 19-5-103, MCA; and, (3) that the procedure used by Judge Wilson in calling in retired Judges Sande and Allen violated local rule 10 of the Rules of Court of the Thirteenth Judicial District.

Thereafter this Court ordered the other district judges of the Thirteenth Judicial District joined as respondents in this case; set aside our prior order calling Judges Sande and Allen to active service without prejudice to our final determination of this cause; directed reassignment of the four criminal cases to active district judges as provided in local rule 10; ordered responses, replies and briefing; and provided that pending resolution of this case, retired judges would not be called to sit in the Thirteenth Judicial District except in compliance with local rule 10.

Responses and briefs were thereafter filed by all judges of the Thirteenth Judicial District, by retired Judges Sande and Allen, by petitioners, and by amici Charles F. Moses and the Attorney General. The parties and amici were heard on oral argument on November 28, 1983.

The briefs and oral arguments of the parties and amici set forth widely divergent and contradictory positions. Accordingly, we will not attempt to identify and set forth the position of each but will analyze and comment on the principal contentions and arguments in this case by whomever raised.

The first principal contention is that retired judges are not "other judges" within the meaning of Article VII, Section 6, of the Montana Constitution, empowering the Chief Justice, upon request of the district judge, to assign "dis-

trict judges and other judges for temporary service from one district to another, and from one county to another."

The proponents of this position contend that the power to exercise judicial functions comes only from the people under the Montana Constitution and the Constitution does not vest judicial powers in a judge after his term of office expires. Consequently, they contend, the Supreme Court or the Chief Justice cannot vest judicial powers in a retired judge under its inherent powers because its inherent powers are limited by the Constitution.

We recognize that the power to exercise judicial functions comes from the people. Article II, Section 1, of the Montana Constitution so provides: "All political power is vested in and derived from the people." The Judicial Article in the Montana Constitution provides that the judicial power of the state is vested in one supreme court, district courts, justice courts and such other courts as may be provided by law. Article VII, Section 1, Mont. Const. The Judicial Article further establishes the jurisdiction of the district courts "in all criminal cases amounting to felony and all civil matters and cases at law or in equity." Article VII, Section 4, Mont. Const. It provides that the term of office of a district judge is six years (Article VII, Section 7(2), Mont. Const.) and for the qualifications of a district judge (Article VII, Section 9(4), Mont. Const.).

The Judicial Article of the Constitution further provides that: "The Chief Justice may, upon request of the district judge, assign district judges _and_ _other_ _judges_ for temporary service from one district to another, and from one county to another." (Emphasis added.) Article VII, Section 6(3), Mont. Const. This is the source of the constitutional power exercised in this case. It is not an inherent power,

4

but a power delegated to the Chief Justice by the people of Montana under this constitutional provision.

Relators and their proponents argue that the words "and other judges" do not include retired judges because Montana has an elected judiciary, that a judge whose term of office has expired is no longer a judge, and that a person who is not a judge cannot exercise judicial functions.

While it is true in a general sense that Montana has an elected judiciary, all persons serving as judges and exercising judicial functions are not elected by the people by popular vote. For example, retired judges are empowered to serve as water judges and are selected by a committee of district judges. Section 3-7-201(1), MCA. The Chief Water Judge is appointed by the Chief Justice of the Montana Supreme Court and may be a retired judge. Section 3-7-221, MCA. Judge Lessley and Judge Thomas, both retired district judges, are presently serving in such capacities and exercising judicial functions. The Workers' Compensation Judge clearly exercises judicial functions but is appointed by the Governor, not elected by the people. Section 2-15-1014, MCA. Judges pro tempore likewise exercise judicial functions and are selected by the litigants, not elected by the people. Section 3-5-113, MCA. The fact that retired judges' terms as district judges have expired does not, in itself, disqualify them from exercising judicial functions.

Relators and proponents of their position further argue that retired judges are not encompassed in the term "other judges" in Article VII, Section 6(3), of the Montana Constitution because retired judges have no district or county. This provision empowers the Chief Justice, upon request of the district judge, to assign "district judges and other judges for temporary service from one district to another,

5

and from one county to another." We find nothing in this constitutional language eliminating retired judges from inclusion in the term "other judges" simply because they have no regularly assigned district or county. The language simply means that either can be assigned temporarily to any district or county where their services are requested by the district judge of that district or county.

It is further argued that allowing a retired judge to act as a district judge would result in having two incumbents in the same office at the same time--a de jure judge duly elected by the people and a de facto judge in the person of a retired judge. This is prohibited according to proponents of this view who cite in support: Marcellus v. Wright (1921), 61 Mont. 274, 202 P. 381; Reimer v. Firpo (1949), 94 Cal.App.2d 798, 212 P.2d 23; Olmstead v. Dist. Ct. (1965), 157 Colo. 326, 403 P.2d 442; Fox v. Fox (1968), 84 Nev. 368, 441 P.2d 678; LaGrange v. Del E. Webb Corp. (1968), 83 Nev. 524, 435 P.2d 515; Chavez v. Baca (1943), 47 N.M. 471, 144 P.2d 175; 48A CJS, Judges, § 57 at 635-636.

We have no quarrel with the general proposition that there cannot be two incumbents in the same office at the same time and that a judge's power ceases when his term of office expires absent enabling legislation. The cited authorities support these general propositions.

However, these authorities are distinguishable from the situation in this case. In the cited cases there was no grant of constitutional power as in the present case. For example, in the only Montana case cited, a former district judge granted a new trial after his term had expired without constitutional or statutory authority. Marcellus v. Wright, supra. Here, there is an express grant of constitutional authority to the Chief Justice upon request of the district

6

judge. Article VII, Section 6(3), Mont. Const. This does not create two incumbents in the same office at the same time. The district judge is the only incumbent in the office. The retired district judge called in does not become a second incumbent in that office, but simply exercises the powers of a district judge on a temporary basis on request of the district judge. If an active district judge from another judicial district were called in, can it seriously be argued that the called-in judge becomes a second incumbent in the office of district judge of that district? To ask the question is to answer it.

In our view, the constitutional provision in question addresses the problem of congestion in a particular judicial district or in a particular county. It requires initiation by request of the district judge and approval of that request by assignment of the Chief Justice. This is borne out by the explanation of Constitutional Convention Delegate Berg in the transcript of Constitutional Convention proceedings:

> "DELEGATE BERG: I should only comment upon that change [amendment of the language in Article VII, Section 6(3), of the Montana Constitution] that it was felt that the Chief Justice ought not to be able to assign district judges, in effect, willy-nilly around the state; that it could be open to possible abuse; that the real need arises when there is heavy congestion in one District Court; and, therefore, upon the request of that district judge, the Supreme Court Chief Justice may assign any other judge in there to assist him in the cleanup of his work. That is the reason for this ad hoc amendment." [Bracketed phrase added.] Transcript of Constitutional Convention, Vol. IV, at 1081.

> "DELEGATE BERG: Yes, we consider the present voluntary system [of one district judge calling in another between themselves] to be very adequate, but we felt that there may be situations arise where a judge in one city or another may be overwhelmed, and he could request appointment by the Supreme Court."

[Bracketed phrase added.] Transcript of Constitutional Convention, Vol. IV, at 1083.

It is reasonably clear from the foregoing explanation that the framers of Article VII, Section 6(3) felt that something more than the existing statutory scheme of one judge calling in another on a specific case was necessary to handle congestion in one county or one judicial district. Hence, Article VII, Section 6(3) was adopted. As a practical matter, if they intended to bar retired judges from being called in for temporary service to clean up the congestion, where would the "other judges" come from? No answer has been advanced and we know of none. There is simply no other pool of qualified judges available. To call in another active district judge for temporary service to relieve the congestion in one district or county is simply robbing Peter to pay Paul. It simply creates congestion in the first county or district for lack of the services of their district judge while he is away.

At the time of the Constitutional Convention existing Montana statutes referred to retired judges as judges. Section 19-5-101, MCA; section 19-5-103, MCA. Since the legislature has the power to determine the number of district judges, it is significant that the legislature has seen fit to include retired judges as judges in the legislative scheme. Another facet of the legislative scheme is the legislature's determination that retired judges should be subject to call. Section 19-5-103, MCA. It is clear that the legislature intended the use of retired judges as a source of judicial help at a significant cost saving inasmuch as retired judges are paid the difference between their retirement allowance and the salary of a district judge for each day of active service. Section 19-5-103, MCA.

8

In sum, we construe Article VII, Section 6(3), of the Montana Constitution to include retired judges in the term "other judges" and to empower the Chief Justice, upon request of the district judge, to assign retired judges for temporary service to any judicial district or county in Montana. This provision is a constitutional grant of power exclusive of any statutory grant by the legislature.

The second principal argument of relators and their proponents is that retired judges are not empowered to enter final judgement in any cause, civil or criminal, under section 19-5-103, MCA. That statute provides in pertinent part:

> "*Call of retired judge for duty.* (1) Every judge or justice who has voluntarily retired after 8 years of service shall, if physically and mentally able, be subject to call by the supreme court or the chief justice thereof to aid and assist the supreme court, any district court, or any water court under such directions as the supreme court may give, including the examination of the facts, cases, and authorities cited, and the preparation of opinions for and on behalf of the supreme court, district court, or water court, or to serve as water judge. The opinions, when and if and to the extent approved by the court, may by the court be ordered to constitute the opinion of such court. Such court and such retired judge or justice may, subject to any rule which the supreme court may adopt, perform any and all duties preliminary to the final disposition of cases insofar as not inconsistent with the constitution of the state."

We note at the outset that this statute is a legislative grant of power and must yield to the constitutional grant of power in Article VII, Section 6(3), to the extent of any inconsistency. State ex rel. Nagle v. Stafford (1934), 97 Mont. 275, 34 P.2d 372. However, it is apparent that the constitutional provision and the statute address two different situations and are mutually exclusive. The constitutional provision, on the one hand, is a grant of power to the

Chief Justice to assign district judges and retired district judges for temporary service to a judicial district or county upon a request initiated by the district judge. It addresses the situation where there is a heavy congestion in one county or district and the district judge is overwhelmed with cases. The statutory grant of power by the legislature, on the other hand, empowers the Supreme Court or the Chief Justice absent any request by the district judge to call in a retired judge "to aid and assist" either the Supreme Court or any district court under such directions as the Supreme Court may give. It limits the power of the retired judge to the performance of "any and all duties preliminary to the final disposition of cases insofar as not inconsistent with the constitution of the state." This legislative grant addresses the situation where a district judge needs help in legal research, the preparation of opinions, and preliminary matters such as a court commissioner might perform without the necessity of creating a new position and at a substantially reduced cost. It requires the district judge to approve and adopt the work of the retired judge and is ill adapted to a situation of heavy congestion where the district judge is overwhelmed with cases.

Since the constitutional provision and the statute are mutually exclusive, address two different situations, are triggered by action of different judicial entities, and are otherwise dissimilar, they are not necessarily in conflict. So construed, both can be given effect. Such construction is preferable as this Court exercises restraint in reaching questions of constitutionality of legislative acts, particularly where a case can be decided on nonconstitutional grounds. Dieruf v. City of Bozeman (1977), 173 Mont. 447, 568 P.2d 127. If construed otherwise, the statute must yield

10

to the constitutional grant of power without limitation. *State ex rel. Nagle v. Stafford, supra.* Here, the retired judges were called in pursuant to the constitutional grant and not under the statute. Accordingly, the retired judges have the complete jurisdiction of the district court "in all criminal cases amounting to felony and all civil matters and cases at law or in equity," Article VII, Section 4, Mont. Const., including final dispositions.

The final principal contention of relators and their proponents is that Judge Wilson violated local rule 10 of the Rules of Court of the Thirteenth Judicial District in calling in retired Judges Sande and Allen in the four criminal cases that are the subject of this petition.

Local rule 10 provides in substance that where one of the district judges recuses himself in a case, the Clerk of Court shall reassign the case in a random manner in equal numbers among the other judges in the district before the last judge substituted shall call in an outside judge. Here, the procedure was not followed as Judge Wilson immediately called in Judges Sande and Allen in the four cases.

This issue is moot. Following the filing of relators' petition in this case, we directed reassignment of the four criminal cases to active district judges as provided in local rule 10. Since local rule 10 has now been complied with, nothing remains for decision by this Court.

We have read and considered all briefs, arguments and authorities raised by relators, the four district judges of the Thirteenth Judicial District, retired Judges Sande and Allen, amici Moses and the Attorney General, and find it unnecessary to burden this opinion with a discussion of all their arguments and contentions. None would affect our

11

decision in this case or our rulings on the principal issues as set forth in this opinion.

Relators' petition for a writ of supervisory control or other appropriate relief is denied and this proceeding dismissed.

_Frank I. Haswell_
Chief Justice

We concur:

_John Conway Harrison_

_[signature]_

_L.C. Gulbrandson_

_John C. Sheehy_

Justices

12

Mr. Justice Frank B. Morrison, Jr. respectfully dissents as follows.

The majority opinion states:

"While it is true in a general sense that Montana has an elected judiciary, all persons serving as judges and exercising judicial functions are not elected by the people by popular vote."

The majority opinion then cites examples of judges having limited jurisdiction such as water judges and workers' compensation judges. While it is true that there are examples of judges with limited jurisdiction not being elected, there are no examples of general jurisdiction judges who do not have to face the voters.

All Supreme Court justices and district court judges in Montana are elected unless appointed to fill a vacancy. If appointed, then that appointee must appear on the ballot at the next election following confirmation.

The effect of the majority opinion is to create an appointed judiciary which will co-exist with an elected judiciary. The pool of former judges in retirement continues to grow and before too many years may equal in number the judges in active service. The result will be that hundreds of Montanans will have their case decided by one who is not a judge at all. The majority has determined that to qualify to serve as a judge by appointment one need only have a vested interest in the judicial pension fund. Therefore, one who enters the judiciary at thirty-five years of age and serves one six-year term qualifies for judicial service for the balance of his or her life. Such a person may serve by appointment of the Chief Justice for thirty years without ever facing voter rejection.

In my opinion there is no support for this approach in the Constitution. The majority relies upon Article VII, section 6(3), Mont. Const. which provides:

"The Chief Justice may, upon request of the district judge, assign district judges and other judges for temporary service from one district to another, and from one county to another."

The majority interprets the phrase "other judges" to include former judges in retirement. Former judges are not judges.

The majority opinion states:

"As a practical matter, if they intended to bar retired judges from being called in for temporary service to clean up the congestion, where would the 'other judges' come from? No answer has been advanced and we know of none."

The majority apparently has not listened to the views of the minority in this case. This author thinks the term "other judges" found in the Constitution refers to active judges other than district court judges. Article VII, section 6(3), Mont. Const., cited above, states that the Chief Justice may assign district judges for temporary service in districts other than those from which they are elected and may assign "other judges" from one county to another. This would mean that if there is congestion in certain justice courts that upon the request of a district judge, the Chief Justice can assign a justice of the peace to serve in a county other than the one from which that justice of the peace was elected. For example, if the justice of the peace court in Helena (Lewis and Clark County) was extremely congested, Judge Gordon Bennett could request the Chief Justice to assign a justice of the peace from Townsend (Broadwater County) for temporary service in Helena. This is the clear meaning of the constitutional provision.

The majority has engaged in a strained construction to achieve a result. There are congested district court dockets in Montana and to solve the problem the majority of this Court decided to transform former judges into active judges

14

by appointment. While this may be a practical solution to a problem it clearly frustrates the mandate of the people of Montana to have an elected judiciary. Furthermore, in order to achieve the result the majority has rewritten a constitutional provision and, in doing so, have violated well-established rules of constitutional construction.

As a matter of policy I may wish to see the problem of court congestion resolved. However, the problem should properly be left to the Legislature.

_____
Justice

Mr. Justice Daniel J. Shea dissenting:

I join in the dissent of Justice Morrison. The will of the people as expressed in our Constitution has been clearly frustrated by the majority opinion giving de facto life-time tenure to all retired judges in this State by the simple mechanism of a district judge calling the Chief Justice to ask for help in deciding cases. This is judicial constitution tampering at its worst.

_____
Justice

15