No. 86-193

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

IN RE THE MARRIAGE OF
MARY ANN MANUS,

        Petitioner and Respondent,

   and

TEX W. MANUS,

        Respondent and Appellant.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Nat Allen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hash, Jellison, O'Brien & Bartlett; M. Dean Jellison,
Kalispell, Montana

    For Respondent:

        George B. Best, Kalispell, Montana

---

Submitted on Briefs: Nov. 13, 1986

Decided: March 4, 1987

Filed: MAR 4 - 1987

*Ethel M. Harrison*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Tex Manus appeals the findings of fact and conclusions of law entered by the Eleventh Judicial District Court, Flathead County, on December 11, 1985. The court awarded Mary Ann Manus sole custody of the two children, child support of $250 per month per child, maintenance of $300 per month for five years, property division payments of $207.46 per month for five years, and Mary Ann's attorney fees. We affirm the District Court on all issues.

Tex raises six issues for our review:

1. Did the District Court abuse its discretion when it granted sole custody to Mary Ann?

2. Did the District Court abuse its discretion when it awarded child support to Mary Ann?

3. Did the District Court abuse its discretion when it adopted Mary Ann's valuation of the marital property?

4. Did the District Court abuse its discretion when it awarded maintenance to Mary Ann?

5. Did the trial court abuse its discretion when it awarded attorney fees to Mary Ann?

6. When a retired district judge who was called into jurisdiction during a judicial vacancy, has rendered judgment and has been succeeded by a duly-appointed district judge, does the retired district judge retain jurisdiction to deny a subsequent motion for new trial?

Tex Manus and Mary Ann Manus were married on June 20, 1969, in Bonner's Ferry, Idaho. Two daughters were born of the marriage, Channin in 1970 and Nickole in 1971. During the marriage, Tex and Mary Ann acquired a marital estate worth $115,000. This included the home now occupied by Tex, rental property, household goods, vehicles, a balance receiv-

2

able on a contract in escrow, a savings account, and Tex's profit sharing account.

In August 1984, Mary Ann separated from Tex. Mary Ann filed a petition for dissolution on February 22, 1985. She and her daughters currently reside in Usk, Washington, near Mary Ann's parents. Tex currently resides in Whitefish, Montana.

Issue 1

Did the District Court abuse its discretion when it granted sole custody to Mary Ann?

The standard of review on custody issues was outlined in Bier v. Sherrard (1981), 623 P.2d 550, 551, 38 St.Rep. 158, 159:

> In order to prevail, [appellant] must show an abuse of discretion by the judge, must demonstrate that there is a clear preponderance of evidence against the findings, and must overcome the presumption that the judgment of the trial court is correct. In reviewing the District Court's custody order, this Court need only look to the record to see if the factors set forth in section 40-4-212, MCA, were considered, and then must determine whether the trial court made appropriate findings with respect to these criteria. [Emphasis added.]

The factors set forth in § 40-4-212, MCA, place paramount importance on the best interests of the child:

> The court shall determine the custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
>
> (1) the wishes of the child's parent or parents as to his custody;
>
> (2) the wishes of the child as to his custodian;

3

(3) the interaction and interrelation of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school, and community; and

(5) the mental and physical health of all individuals involved.

In its findings of fact, the District Court recognized that several of the factors of § 40-4-212, MCA, weighed heavily in favor of granting custody to Mary Ann:

3. That one of the children, Channin, is mildly retarded and, although attends school, is in a special education program, is unable to care for herself, and in all likelihood will be unable to care for herself for many years to come.

4. There is a close relationship between mother and daughters. They have lived together continuously during the period of separation. Mother is required to and does take care of the daily needs of both children in addition to taking care of the special needs of Channin, both educational and practical.

5. That while visiting their father, their paternal grandfather molested Channin.

6. Prior to this molestation, Respondent herein was made aware of the father's propensities by Mrs. Manus having warned him that such an attempt had been made upon her.

7. That as a result of the molestation which occurred to Channin, she will require continuous psychiatric care in addition to her special education needs.

4

The record further reveals that Tex had only seen the children three times in the previous eighteen months, and the children did not express any desire to spend time with Tex. In spite of this, Tex requested joint custody. He now argues that the District Court failed to state adequate reasons for denying his request, as required by § 40-4-224(1), MCA. The statute provides:

> Upon application of either parent or both parents for joint custody, the court shall presume joint custody is in the best interests of a minor child unless the court finds, under the factors set forth in 40-4-212, that joint custody is not in the best interests of the minor child. If the court declines to enter an order awarding joint custody, the court shall state in its decision the reasons for denial of an award of joint custody. [Emphasis added.]

We note that any presumption favoring joint custody in § 40-4-224, MCA, was overridden by the abundant evidence supporting the grant of sole custody to Mary Ann. The findings and reasons for granting her sole custody are identical to the reasons for denying joint custody to Tex, and thereby comply with the mandates of § 40-4-224(1), MCA.

We have repeatedly given the District Court broad discretion in deciding custody disputes. "The responsibility of deciding custody is a delicate one which is lodged with the district court. The judge hearing oral testimony in such a controversy has a superior advantage in determining the same, and his decision ought not to be disturbed except upon a clear showing of abuse of discretion." Gilmore v. Gilmore (1975), 166 Mont. 47, 51, 530 P.2d 480, 482, citing In Re Adoption of Biery (1974), 164 Mont. 353, 522 P.2d 1377. The record fully supports the court's findings and conclusions. We hold that the District Court properly considered the

5

children's best interests and did not abuse its discretion when it granted custody to Mary Ann.

## Issue 2

Did the District Court abuse its discretion when it awarded child support to Mary Ann?

Tex argues that the court did not make any findings about the financial needs of the children or the ability of each parent to pay. He contends that the court failed to follow the holding of In Re Marriage of Capener (1978), 177 Mont. 437, 441, 582 P.2d 326, 328, which states: "The pertinent factors in [§ 40-4-204, MCA], with findings of fact to support them, should be set out in the District Court's decision for otherwise the appellate court has nothing upon which to base its review."

Section 40-4-204, MCA, lists six factors the court shall consider when ordering child support:

> (a) the financial resources of the child;
>
> (b) the financial resources of the custodial parent;
>
> (c) the standard of living the child would have enjoyed had the marriage not been dissolved;
>
> (d) the physical and emotional condition of the child and his educational needs;
>
> (e) the financial resources and needs of the non-custodial parent; and
>
> (f) for the purposes of determining a minimum amount for support, the amount received by children under the AFDC program, as defined in 53-2-702.

6

We have ample findings upon which to base our review. Judge Allen specifically noted the financial resources and needs of the children and parents in the following findings:

8. That the estimated charges for [Channin's] continuing psychiatric treatments will be approximately $120.00 per week.

10. Mr. Manus is an able-bodied, employed man, having worked for the past ten years for Plum Creek as a chip truck driver. He is 42 years of age, in good health, and his expected salary for the year 1985 will exceed $38,000.00. His income has grown steadily during the past ten years. His take home pay is approximately $2,400.00 per month after depositing to voluntary retirement programs in excess of $200.00 per month. As part of his employment, Mr. Manus receives medical health coverage, which coverage is available to members of his family.

11. Mary Ann Manus lives in Usk, Washington with her daughters, is a person of 43 years of age, is presently under a doctor's care, taking prescription medication three times daily. Mary Ann Manus works as a part-time waitress earning approximately $3.50 per hour. She takes home approximately $400.00 per month. There is no other suitable employment available to her as a result of her physical and emotional conditions requiring medical care.

12. The expenses for Mr. Manus and his girlfriend are less than $1,000.00 per month.

13. The expenses of Mrs. Manus, excluding psychiatric care for Channin, exceed $1,584.00 per month.

These findings are well-supported by the record. We will not set aside the District Court's findings of fact

7

unless there is a clear abuse of discretion. Grenfell v. Grenfell (1979), 182 Mont. 229, 232, 596 P.2d 205, 207. We find no such abuse in this case. Therefore, we hold that the District Court properly awarded child support of $250 per month per child.

Issue 3

Did the District Court abuse its discretion when it adopted Mary Ann's valuation of the marital property?

The District Court substantially adopted Mary Ann's valuation of the marital estate. Tex argues that the District Court failed to adequately support the decision in its findings. However, we note that in Finding No. 14, the District Court carefully itemized the property that the Manuses had acquired during their sixteen-year marriage. The real property included the family home in Whitefish and some rental property. The personal property included two trucks, several trailers, tools, and miscellaneous household goods.

As we held in In Re Marriage of LeProwse (1982), 198 Mont. 357, 646 P.2d 526, 529, the fact that the District Court substantially adopted the findings proposed by one party does not change the standard of review. That standard of review was recently outlined in In Re Marriage of Rolfe (Mont. 1985), 699 P.2d 79, 83, 42 St.Rep. 623, 626, where we held:

> In dividing property in a marriage dissolution the district court has far reaching discretion and its judgment will not be altered without a showing of clear abuse of discretion. The test of abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.

8

The District Court's conclusions were neither arbitrary nor unreasonable. By his own testimony, Tex's evidence supports the court's findings. His estimate for the total value of the marital estate was $109,000. He valued Mary Ann's share at $55,000. Mary Ann estimated the total value at $115,000, with her share at $45,000. Tex and Mary Ann's estimates differ by 10 percent or less. These differences are well within an acceptable appraisal range. The District Court's findings are properly based on Mary Ann's estimates and supported by Tex's evidence. We hold that the court did not abuse its discretion when it ordered Tex to pay Mary Ann $12,448 to equalize the marital estate, in monthly payments of $207 for five years.

Issue 4

Did the District Court abuse its discretion when it awarded maintenance to Mary Ann?

Tex argues that the District Court did not justify the maintenance awards, because it made no finding that Mary Ann was unable to meet her reasonable needs, and the court did not distinguish her needs from those of the children.

The factors to be considered in a maintenance award are outlined in § 40-4-203(1), MCA:

> (1) In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
>
> (a) lacks sufficient property to provide for his reasonable needs; and
>
> (b) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that

9

>the custodian not be required to seek
employment outside the home.

The District Court addressed § 40-4-203(1)(a), MCA, in two findings. Finding No. 11 notes that Mary Ann's income is $400 per month. Finding No. 14 lists income-producing property, from which Mary Ann receives approximately $400 per month. Tex contends that his monthly payments of $207, to equalize the property division of the marital estate, should also be considered in Mary Ann's monthly income.

However, we note that the property payments are merely the liquidation of assets that Mary Ann had acquired during the marriage and cannot be considered as part of her current income. Excluding the property payments and child support, the combined income from Mary Ann's property and employment is only $800.

Tex's argument is also disputed by Finding No. 17, which addresses § 40-4-203(1)(b):

>Mrs. Manus will need to devote her attention to caring for Channin and Nickole through the next four years of school and high school, two years of special education, college for Channin, then one year of college work for herself in order to be able to enter the job market.

Both Mary Ann's need for retraining and the needs of her children justify the District Court's award of maintenance.

As we held in In Re Marriage of Korpela (Mont. 1985), 710 P.2d 1359, 1360, 42 St.Rep. 1912, 1914, the spouse seeking maintenance must show both lack of sufficient property and also incapability of self-support. Mary Ann has met this burden. Therefore, the District Court did not abuse its discretion when it awarded Mary Ann $300 per month in maintenance for five years.

10

## Issue 5

Did the trial court abuse its discretion when it awarded attorney fees to Mary Ann?

The court's Finding No. 18 states: "That the Petitioner has been forced to hire counsel and is unable to pay for counsel." Tex argues that the court awarded Mary Ann income-producing property, yet found she was unable to pay her attorney fees. Tex contends that Finding No. 17 is not supported by the evidence and represents an abuse of discretion. Tex further argues that the court must indicate in its findings the reason for granting the award of attorney fees.

We note that a discretionary award of attorney fees is sanctioned in § 40-4-110, MCA: "The court from time to time after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party . . . for attorney fees . . . ."

Although Mary Ann's counsel fails to cite any authority on this issue, we note that an award of attorney fees under the statute is "largely discretionary with the District Court and we will not disturb its judgment in the absence of an abuse of that discretion." In Re Marriage of Johnston (Mont. 1986), 726 P.2d 322, 326, 43 St.Rep. 1808, 1812-1813, citing Talmage v. Gruss (1983), 202 Mont. 410, 412, 658 P.2d 419, 420.

The District Court examined each party's financial position. During the marriage, Mary Ann worked as a homemaker and took care of the two children. Both children now live with her. Mary Ann requires additional vocational training and is currently under a physician's care. She earns $800 per month. In contrast, Tex earns $2,400 per month and is in good health. The court's findings adequately support its conclusion. In view of the parties' relative financial positions and health, the award of attorney fees was not an

11

abuse of discretion. Carr v. Carr (Mont. 1983), 667 P.2d 425, 427, 40 St.Rep. 1263, 1266.

## Issue 6

6. When a retired district judge who was called into jurisdiction during a judicial vacancy, has rendered judgment and has been succeeded by a duly-appointed district judge, does the retired district judge retain jurisdiction to deny a subsequent motion for new trial?

During the terminal illness of Judge Salansky, Judge of Department One of the District Court of Flathead County, various retired judges were called in to assist with his caseload. By order dated July 30, 1985, this Court recalled Judge Allen to assume all duties of that department for an indefinite period beginning September 1, 1985.

The order was issued in accordance with Article VII, Section 6(3), 1972 Mont. Const., which authorizes such assignments. "The chief justice may, upon request of the district judge, assign district judges <u>and</u> <u>other</u> <u>judges</u> for temporary service from one district to another, and from one county to another." (Emphasis added.)

On December 2, 1985, the instant case was tried before Judge Allen, who rendered judgment on December 11, 1985. Judge Leif B. Erickson was formally sworn in as Judge Salansky's successor on December 11, 1985, and assumed all judicial duties on December 12, 1985.

Tex filed a motion for a new trial on December 17, 1985. On January 31, 1986, Judge Erickson decided that he did not have jurisdiction to rule on Tex's motion. He relied on State ex rel. Wilcox v. District Court (Mont. 1984), 678 P.2d 209, 41 St.Rep. 397, which defined the scope and authority of a retired district judge called into jurisdiction under Article VII, Section 6(3). The <u>Wilcox</u> court held that

12

such judges have the complete jurisdiction of the District Court in all civil matters and cases at law, including final dispositions. Wilcox, 678 P.2d at 215, 41 St.Rep. at 403. Accordingly, Judge Allen retained jurisdiction and on February 27, 1986, issued an order denying Tex's motion.

Judge Erickson's decision is consistent with our policy of judicial economy. By providing a bridge of continuing jurisdiction, such a policy ensures that a successor judge does not oust the authority of a retired district judge to efficiently dispose of the matters that have been undertaken by him.

We affirm the District Court on all issues.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

13