FILED

October 29 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 15-0537

OP 15-0537

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 311

_____

JON E. CUSHMAN,

      Petitioner,

v.

MONTANA TWENTIETH JUDICIAL DISTRICT
COURT, LAKE COUNTY, HONORABLE DEBORAH
KIM CHRISTOPHER, and JAMES A. MANLEY,
DISTRICT COURT JUDGES, and RETIRED DISTRICT
JUDGE DOUGLAS G. HARKIN,

      Respondents.

O P I N I O N
A N D
O R D E R

_____

¶1     Petitioner Jon E. Cushman asks this Court to exercise supervisory control over the Twentieth Judicial District Court in Lake County Cause No. DV 14-205. Specifically, Cushman asks us to direct District Judges Deborah Kim Christopher and James A. Manley to vacate their August 28, 2015 Order Returning Jurisdiction of the case to Judge Manley. Cushman also asks Chief Justice Mike McGrath to rule upon and deny the motion to substitute judge filed by the plaintiff in that case, Terry Trieweiler, d/b/a Trieweiler Law Firm. Trieweiler and Judge Christopher have filed responses to the petition for a writ of supervisory control. With leave of the Court, Cushman has filed a reply.

¶2 Lake County Cause No. DV 14-205 originally was assigned to Judge Manley. In October of 2014, Judge Christopher assumed jurisdiction after defendant Abbey/Land, LLC, moved for substitution under § 3-1-804, MCA. Then, at the request of Judge Christopher, Chief Justice McGrath called in retired District Judge Douglas G. Harkin to preside over the case. Trieweiler then requested substitution under § 3-1-804, MCA. In response, Judges Christopher and Manley entered the order at issue here, returning jurisdiction to Judge Manley "or to Chief Justice McGrath."

¶3 Supervisory control is an extraordinary remedy that is sometimes justified when urgency or emergency factors make the normal appeal process inadequate, the case involves purely legal questions, and the other court is proceeding under a mistake of law causing a gross injustice or constitutional issues of state-wide importance are involved. M. R. App. P. 14. Here, the substantive question relates to the applicability of § 3-1-804, MCA, in situations in which the chief justice has called a retired judge into service pursuant to § 19-5-103, MCA. Although codified in the Montana Code Annotated, § 3-1-804, MCA, is a Court-adopted rule. We will entertain Cushman's petition because it presents an issue of law regarding the threshold matter of whether a judge has authority to proceed with a case and, because it requires the construction of a rule of this Court, the legal issue should be resolved in the first instance by this Court.

¶4 The substitution rule provides:

SUBSTITUTION OF DISTRICT JUDGES

This section applies to judges presiding in district courts. It does not apply to any judge sitting as a water court judge, to a workers'

2

compensation court judge, or to a judge supervising the distribution of water under 85-2-406, including supervising water commissioners under Title 85, chapter 5, part 1.

(1)   Each adverse party is entitled to one substitution of a district judge.

(a)   In a civil action other than those noted in subsection (1)(c), a motion for substitution by the party filing the action must be filed within 30 calendar days after the first summons is served or an adverse party has appeared. A motion for substitution by the party served must be filed within 30 calendar days after service has been completed in compliance with M. R. Civ. P. 4.

.   .   .

(5)   After a timely motion has been filed, the substituted district judge does not have the power to act on the merits of the case or to decide legal issues in the case, except as provided in subsection (10).

(6)   The first district judge who has been substituted or disqualified for cause has the duty of calling in all subsequent district judges. In a multijudge district, all other district judges in that district must be called before a district judge from another district is called.

.   .   .

(8)   If the presiding judge in any action recuses himself or herself or if a new district judge assumes jurisdiction in any action, the right to move for substitution of a district judge is reinstated, except as to parties who have previously obtained a substitution. The time periods run anew from the date of service of notice or other document identifying the new district judge.

.   .   .

(10) A district judge who has previously been substituted from the case may agree to set the calendar, draw a jury, and conduct all routine matters including arraignments, preliminary pretrial conferences in civil cases, and other matters that do not address the merits of the case, if authorized by the presiding district judge.

¶5    Cushman argues that a retired judge called to active service is not a "district judge," and § 3-1-804, MCA, does not apply.  He asks Chief Justice McGrath to rule on

3

and deny Trieweiler's motion to substitute. On the other hand, Trieweiler takes the position that, as a "judge[] presiding in district court[]," Judge Harkin properly may be substituted under § 3-1-804, MCA, and the case properly was referred back to Judge Manley, the original presiding judge, to call in a subsequent district judge. Judge Christopher states that she defers to this Court on the question of who should address the motion to substitute.

¶6      Cushman cites *State ex rel. Wilcox v. Dist. Ct.*, 208 Mont. 351, 678 P.2d 209, (1984), as authority that a retired judge is an "other judge" and not a "district judge." In *Wilcox*, the Court examined the interaction of Article VII, Section 6(3) of the Montana Constitution, which empowers the chief justice to "assign district judges and other judges for temporary service," and § 19-5-103, MCA, which authorizes the chief justice to call retired judges for duty "to aid and assist any district court . . . under directions that the chief justice may give." The Court construed the term "other judges" in Article VII, Section 6(3) to include retired judges, so as to empower the chief justice to assign retired judges to temporary service to any judicial district or county in Montana. The Court further stated that the constitutional provision and the statutory provision allowing the chief justice to call a retired judge into service "address two different situations [and] are mutually exclusive." *Wilcox*, 208 Mont. at 360-61, 678 P.2d at 214-15. The Court observed that the statutory grant of power was limited to the performance of "any and all duties preliminary to the final disposition of cases." *Wilcox*, 208 Mont. at 361, 678 P.2d at 215.

4

¶7    We observe that the 2015 Montana Legislature struck the above limiting provision of § 19-5-103, MCA, as of February 17, 2015.  And, in his July 2015 order, Chief Justice McGrath called Judge Harkin into service in Lake County Cause No. DV 14-205 "to proceed with any and all necessary hearings, opinions, and orders, including final resolution."

¶8    We conclude that when retired district judges are called in to "exercise[] the powers of a district judge on a temporary basis" (*Wilcox*, 208 Mont. at 358, 678 P.2d at 213), they are "judges presiding in district courts" as contemplated by the introductory clause of § 3-1-804, MCA.  The rule provides no exception for judges assigned to a case by the Chief Justice.  *Wilcox* does not compel a contrary conclusion, particularly in light of the statutory amendment harmonizing the statute with the Constitution.  We hold that specific assignments of retired judges under § 19-5-103, MCA, are within the intended scope of the right to substitution under § 3-1-804, MCA, and that the right of substitution applies.

¶9    IT IS ORDERED that the petition for writ of supervisory control is GRANTED.

¶10   IT IS FURTHER ORDERED that the August 28, 2015 Order Returning Jurisdiction shall remain in effect, and Judge Manley shall assign a new judge to preside in Lake County Cause No. DV 14-205.  Should Judge Manley deem it necessary, he may ask the Chief Justice to call in a retired judge to preside in the case pursuant to § 19-5-103, MCA.

5

¶11 IT IS FURTHER ORDERED that the exhibits to the petition for writ of supervisory control be UNSEALED. Nothing in those exhibits includes any constitutionally-protected information. Without a specific constitutional or statutory exception or express direction from this Court, cases before this Court are matters of public record.

Dated this 29th day of October, 2015.

/S/ BETH BAKER

We concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶12 I respectfully dissent from the Court's conclusion that the provisions of Montana's substitution rule, contained in § 3-1-804(8), MCA, may be invoked to remove a retired judge assigned by the Chief Justice pursuant to the constitutional grant of authority contained in Article VII, Section 6 of the Montana Constitution. The constitutional grant, which is procedurally implemented through § 19-5-103, MCA, empowers the Chief Justice, upon request of the district judge, to assign "district judges and other judges" for temporary service. Mont. Const. art. VII, § 6. Our precedent establishes that a retired judge assigned to service pursuant to this constitutional grant of authority is an "other judge" and not a "district judge." Section 3-1-804(8), MCA, applies only to a "district

6

judge" and, consistent with the constitutional grant of authority, the substitution rule may not be used to remove an "other judge" assigned by the Chief Justice.

¶13     Preliminarily, § 3-1-804, MCA, sets forth the procedure to be followed by Montana's district judges, clerks of court, and litigants in order to provide for a parties' "right" to peremptorily strike a district judge. The statute—containing 12 subsections— sets forth a procedure that is specific, comprehensive, time dependent, and resplendent with exclusions. It contemplates numerous procedural scenarios; such as, joining and intervening parties, new trials, reversals and remands, rulings on summary judgments, and the management of routine matters of court. In light of the statute's breadth and comprehensive attempt to set forth substitution procedure in the diverse arena of Montana's trial courts, the introductory paragraph of the statute could only begin with the general proviso that "[t]his section [entitled, 'Substitution of district judges'] applies to judges presiding in district courts." Section 3-1-804, MCA.

¶14     Section 3-1-804, MCA, confers a right to an automatic substitution of a district judge for any reason. It is a right originally conferred by order of this Court and subsequently codified. *See In re the Rules on the Disqualification and Substitution of Judges,* 227 Mont. 31 (1987). In *Swan v. State,* 2006 MT 39, ¶ 24, 331 Mont. 188, 130 P.3d 606, we held that the preemptory judicial strike embodied by § 3-1-804, MCA, was not of constitutional dimension, but was rather a right created by statute. As such, statutory compliance is required in order to realize the right.

7

¶15    The subsection relied upon by Trieweiler to obtain substitution of Judge Harkin is contained in § 3-1-804(8), MCA.  That subsection provides:

> If the presiding judge in any action recuses himself or herself or if a new **district judge** assumes jurisdiction in any action, the right to move for substitution of a **district judge** is reinstated, except as to parties who have previously obtained a substitution.  The time periods run anew from the date of service of notice or other document identifying the new **district judge**.

(Emphasis supplied.)  No right of substitution exists apart from the specific provisions of § 3-1-804, MCA.  Therefore, while Judge Harkin may be a "judge presiding in district court," there must nevertheless be an applicable provision of the rule allowing for the right of substitution under the circumstances of the particular proceeding.  The only applicable provision is that contained in subsection (8), which refers specifically to a "district judge."  To the extent there is any inconsistency between "district judge" and "judge presiding in district court," the more particular provision, district judge, will control over the more general.  Section 1-2-102, MCA.  However, there is no inconsistency when "an interpretation [can be made] which will give effect to each constitutional provision." *City of Missoula v. Cox*, 2008 MT 364, ¶ 11, 346 Mont. 422, 196 P.3d 452.  Here, not every "judge presiding in district court" will be a "district judge" with an assigned district or county and currently serving a six year term as district judge.  There is no inconsistency in specifying that the judge presiding in the district court must be a "district judge" for subsection (8) to apply.  It is simply a more particular provision following an introductory paragraph setting forth general application.  To construe § 3-1-804, MCA, as the Court has done undermines the Chief Justice's authority

8

to assign a retired judge when, for example, the demands of congested judicial districts require assistance. Section 3-1-804, MCA, applies when a "district judge" has been "substituted," "disqualified for cause," or "recuse[d]." *See* Section 3-1-804(6), (8), MCA. If the substitution rule were intended to apply when a judge was "assigned" by the Chief Justice, the specific circumstance would have been included in § 3-1-804, MCA.

¶16     Significantly, in *State ex rel. Wilcox v. District Court of Thirteenth Judicial Dist.*, 208 Mont. 351, 678 P.2d 209 (1984), we held that a retired judge was an "other judge," as opposed to "district judge," when we interpreted "district judge and other judge" and the specific grant of constitutional authority at issue here. In distinguishing "other judge" from a "district judge," we accepted the State's argument that a retired judge was an "other judge" and likewise found there was "nothing in this constitutional language eliminating retired judges from inclusion in the term 'other judges' . . . ." *Wilcox*, 208 Mont. at 359, 678 P.2d at 214. We observed that the term "other judges" contained in Article VII, Section 6(3) of the Montana Constitution was not superfluous and explained:

> It is reasonably clear from the foregoing explanation that the framers of Article VII, Section 6(3) felt that something more than the existing statutory scheme of one judge calling in another on a specific case was necessary to handle congestion in one county or one judicial district. Hence, Article VII, Section 6(3) was adopted. As a practical matter, if they intended to bar retired judges from being called in for temporary service to clean up the congestion, where would the "other judges" come from? No answer has been advanced and we know of none.

*Wilcox*, 208 Mont. at 359, 678 P.2d at 214. Thus, we established in *Wilcox* that the definition of a retired judge was an "other judge," thereby distinguishing a retired judge from a "district judge." When words and phrases are used in statutes which "have

9

acquired a peculiar and appropriate meaning in law" they are to be "construed according to such peculiar and appropriate meaning or definition." Section 1-2-106, MCA.[1]

¶17 Finally, I would be remiss if I did not comment on the underlying nature of these proceedings. On October 27, 2014, Judge Christopher assumed jurisdiction in this matter from Judge Manley after Judge Manley was substituted by the defendants in the underlying matter. At a hearing on June 18, 2015, Judge Christopher suggested to the parties that Judge Harkin should perhaps continue to serve as a special master based upon his considerable knowledge of the proceedings. Judge Harkin had previously served as a special master over much of the discovery and litigation disputes. The proceedings contained 43 files with over 871 filed documents, not including discovery before the filings. Many of the current issues involve the underlying representation by counsel, disputes regarding attorney fees, and potentially privileged discovery involving the attorney-client relationship. Apparently, Trieweiler's services were terminated by his client in both of the underlying proceedings on March 29, 2013. Trieweiler objected to paying any more of Judge Harkin's fees as a special master in the instant proceedings, in which he sought to collect his attorney fees, and suggested that Judge Christopher recuse herself. Judge Christopher requested briefing from the parties regarding her authority to order disputes be handled by a special master and took the matter under advisement.

---

[1] The Court places undue emphasis on the 2015 Montana Legislature's amendments to § 19-5-103, MCA. The amendments merely made the statutory authority for the assignment of a retired judge consistent with this Court's interpretation of the extent of authority granted by Article VII, Section 6(3) of the Montana Constitution.

¶18     On July 16, 2015, Trieweiler filed his petition for a writ of supervisory control with this Court and requested that Judge Christopher be "removed" because she did not have the background or ability to handle the proceedings and that she could not competently and diligently perform her duties.  That same day, Judge Christopher contacted Chief Justice McGrath and requested that Judge Harkin be assigned jurisdiction over the proceedings.  She indicated in a follow-up letter dated July 31, 2015, that Judge Harkin was agreeable and had indicated that assumption over the proceedings would likely be a full-time endeavor and that it would be difficult, if not impossible, to handle the matter in addition to the docket of an active district judge.  In an Amended Order dated July 22, 2015, the Chief Justice assigned Judge Harkin to the case pursuant to § 19-5-103, MCA, and concluded that Trieweiler's petition for writ of supervisory control was moot.  Trieweiler filed his motion to substitute Judge Harkin on July 28, 2015.

¶19     It is clear that the assignment of Judge Harkin to save judicial resources and avoid congestion in the Twentieth Judicial District was exactly the circumstance contemplated by this Court in *Wilcox*, Article VII, Section 6(3) of the Montana Constitution, and § 19-5-103, MCA.  To allow a litigant to remove Judge Harkin by utilizing a substitution rule undermines this constitutional grant of authority to the Chief Justice.  *See SJL Assocs. Ltd. P'ship v. City of Billings*, 263 Mont. 142, 147, 867 P.2d 1084, 1087 (1993) ("statutory interpretations will not be elevated over the protection found within the Constitution.).

¶20    It is hard to ignore that Trieweiler has obtained, through a writ of supervisory control, what he could not otherwise have received through compliance with the statutory provisions of the substitution rule, the disqualification statute, or pursuant to an appeal.[2] Trieweiler has not alleged impartiality, bias, or prejudice on the part of Judge Christopher which would entitle him to disqualification and he failed to substitute Judge Christopher within 30 days of initially filing his complaint as required by the substitution rule. Because Judge Christopher was concerned that these proceedings were increasing "exponentially" and that no presiding district judge could assume the enormity of the case with an active docket, she refused to recuse herself and shift the burden onto one of her colleagues.  Thus, Trieweiler obtained justice "without sale, denial, or delay" and will receive a retired judge, full-time, who is dedicated to just his case.  Now, apparently, he does not like the judge assigned and seeks a substitution under the purported authority of § 3-1-804, MCA.  The new judge who will assume jurisdiction following Judge Harkin's substitution will have a monumental task in reviewing the case and making timely decisions.  I agree with Trieweiler that justice should not be for sale in Montana. However, such a proclamation appears contrary to the forum shopping measures undertaken here by Trieweiler himself and condoned by this Court; first, in pursuing the writ of supervisory control and, second, in filing for substitution.  As set forth above, Trieweiler was not entitled to relief under either measure.  Had Judge Christopher not

---

[2]  A special master may be utilized only by agreement of the parties.  Section 3-5-113, MCA. Thus, had Judge Christopher ordered that the parties utilize Judge Harkin as a special master, Trieweiler could have raised the issue on appeal or pursued, perhaps, a writ of supervisory control.

12

sought assistance in the handling of a difficult and contentious case, Trieweiler would still, as he should be, arguing his case before Judge Christopher as any other litigant. The final effect of these proceedings is that the Court's ability and authority to provide assistance to the district courts has been undermined and the efficient delivery of court services to the Montana citizens severely compromised.

¶21 Based upon the foregoing, I would deny the writ and conclude that Trieweiler has no right to substitution of a retired judge who has been assigned by the Chief Justice pursuant to Article VII, Section 6(3) of the Montana Constitution.


/S/ LAURIE McKINNON

13